James A. EDLUND, Appellant,

v.

R.W. BOUNDS, Appellee.

No. 05–90–00085–CV.

Court of Appeals of Texas,
Dallas.

Sept. 14, 1992.

Rehearing Denied Oct. 26, 1992.

John Alan Goren, Dallas, for appellant.

Will Ford Hartnett, Jack Kent Davenport, Dallas, for appellee.

Before ENOCH, C.J., and BISSETT[1] and ONION[2], JJ.

## OPINION ON REHEARING

ENOCH, Chief Justice.

We withdraw our opinion of July 3, 1992. This is now the opinion of the court. R.W. Bounds sued James A. Edlund on a promissory note. Edlund answered with a general denial and asserted affirmative defenses and a counterclaim. Edlund now appeals the trial court's judgment rendered in favor of Bounds. Bounds cross-appeals the judgment on the issue of attorney's fees. We affirm in part, modify and affirm in part, and reverse and remand in part.

## FACTUAL BACKGROUND

Bounds testified that he and Edlund formed the real estate brokerage company, K–John Real Estate, Inc. (K–John) in the early 1980s. Bounds owned fifty-one percent of the shares. Edlund was president of K–John, ran its day-to-day affairs, and owned forty-nine percent of the shares. In February, 1981, they agreed to purchase the Frances Powell Gallery of Homes for $150,000. The purchase was accomplished with a $150,000 promissory note to Frances Powell in which both Bounds and Edlund were personal guarantors. Frances Powell required security of at least 125% of $150,-000, which Bounds satisfied by pledging a 9.7 acre tract of real property located in Plano. The property was owned by R–Co Corporation (R–Co), a corporation in which Bounds owned a majority of the shares. Bounds further testified that since Edlund had no security to pledge, Edlund voluntarily signed a $75,000 note payable to Bounds. In 1982, Edlund informed Bounds that he was leaving K–John and surrendered his stock to him. Bounds agreed to wind up the affairs of K–John. The business was "broke" and owed over $400,000 to various creditors. Per Edlund's request, Bounds told Edlund that he could delay payment of the $75,000 note until after Edlund sold his home. Bounds testified that he never agreed to forgive the $75,000 note. Edlund sold his home, moved to New York, and failed to pay Bounds the $75,000 due him. In the meantime, Bounds sold the Plano property and with the sale proceeds paid Frances Powell $150,000. Bounds filed suit against Edlund on June 23, 1987 to collect on the note. Bounds also mentioned that he was awarded the $75,000 note in his divorce from Suzanne Stringer.

Kent Davenport testified that reasonable and necessary legal expenses for trying this case for Bounds was $20,000, to appeal this case to the court of appeals would cost $7,500, and to file an application for writ of error with the Texas Supreme Court would cost $2,500. If the Supreme Court granted the writ, Bounds would incur an additional $2,500 in fees.

For the defense, Suzanne Stringer testified that she was formerly Bounds's wife. At the time of their divorce, she was unaware of the $75,000 note. She stated that she claimed a one-half interest in this note because she was married to Bounds at the time it was executed. The divorce decree was admitted into evidence. She also stated that she received nothing from Edlund when she assigned her interest in the note to him on January 13, 1988.

Edlund testified that he became acquainted with Bounds when Bounds sold him a

1. The Honorable Gerald T. Bissett, Justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi, Retired, sitting by assignment.

2. The Honorable John F. Onion, Jr., Presiding Judge, Court of Criminal Appeals, Retired, sitting by assignment.

home. Bounds appeared to be a successful real estate developer and builder. Edlund agreed to go into business with Bounds, and they formed K–John in February, 1981. They invested equal amounts of money in K–John. To expand their business, they agreed to purchase the Frances Powell Gallery of Homes. Edlund would not have signed the note to Bounds had he known that Bounds did not own the Plano property securing the Frances Powell note. In January, 1982, Edlund and Bounds formed Zanz Corporation (Zanz) for franchise transactions. In February, 1982, Bounds and Edlund agreed to close the businesses because they were losing money. They thought that they "could settle out of the relationship on an equal basis," and Edlund "would make up the difference" if they did not break even. Bounds never told Edlund that K–John was over $400,000 in debt. Edlund stated that in addition to the $150,000 Frances Powell debt, K–John owed about $30,000 to $40,000 to various creditors. Bounds told Edlund that K–John expected to collect about $70,000 in income during the winding up period. Edlund testified that their settlement agreement included the forgiveness of the $75,000 note and the distribution of the furniture and over $51,000 to Bounds. Edlund never had any stock in Zanz to surrender. Bounds stated that he left K–John in March, 1982, and left Dallas after he sold his home in August, 1984. In January, 1987, Bounds requested payment of $75,920.09. Edlund believed that the $75,920.09 represented the net difference between amounts collected and debts owed and included interest and a credit on the $75,000 note.

Richard Euting testified that he was president and forty-nine percent owner of R–Co. The remainder of his testimony was excluded by the court as not relevant.

Robert Bounds was called for the defense. He explained that the figures totalling $75,920.09 that he supplied to Edlund in January, 1987, reflected figures Bounds copied from K–John's files. The $75,920.09 represented a settlement offer to prevent a lawsuit. Bounds stated that he never agreed to forgive Edlund's $75,000 note and that Edlund had paid him nothing on the note to date. Bounds was able to elucidate some of the credits and debts received during the winding-up period, but could not explain all of the figures provided to Edlund.

Edlund was recalled and testified that he never told Bounds that he would pay off the note after he sold his house. Bounds never told him that payment of $75,920.09 would prevent a lawsuit.

Bounds called Lawrence Kruger, K–John's accountant, by deposition as a rebuttal witness. Kruger stated that the files he produced were complete records for K–John. He was never told of any settlement agreement between Bounds and Edlund concerning the $75,000 note. Edlund told Kruger that he would be owed some money during the winding-up period but to write it off on his income tax return. Edlund reported a $36,000 loss.

Edlund urged a motion for instructed verdict which was overruled. Bounds presented a motion for instructed verdict which was granted with respect to Edlund's defenses of fraud in the inducement, limitations, and improper plaintiff, and all of Edlund's counterclaims. The jury determined reasonable and necessary attorney's fees for legal services in the preparation and trial of the cause to be one dollar and found that Bounds did not agree to an accord and satisfaction of the $75,000 note.

## STANDARD OF REVIEW

In reviewing an instructed verdict, we consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences. We determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 712 (Tex.App.—Dallas 1989, writ denied). An instructed verdict is proper if (1) a specifically indicated defect in the opponent's pleading makes it insufficient to support a judgment; (2) the evidence proves conclusively the truth of fact propositions that, under the sub-

stantive law, establish the right of the movant, or negate the right of his opponent, to judgment; or (3) the evidence is insufficient to raise a fact issue as to one or more fact propositions that must be established for the opponent to be entitled to judgment. *Fort Worth State School v. Jones,* 756 S.W.2d 445, 446 (Tex.App.–Fort Worth 1988, no writ). An instructed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *C & C Partners,* 783 S.W.2d at 712. It is error for the trial court to instruct a verdict when a material issue is raised by the evidence. *Graziadei v. D.D.R. Mach. Co.,* 740 S.W.2d 52, 55–56 (Tex.App.–Dallas 1987, writ denied). An instructed verdict is improper when reasonable minds may differ as to the truth of the controlling facts. *Id.* at 56. If there is any conflicting evidence of probative value in the record, determination of the issue is for the jury. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983).

## PROMISSORY NOTE

■ In Edlund's first point of error, he contends that the trial court erred by granting Bounds's motion for instructed verdict and in rendering judgment because the evidence proves that the $75,000 note was not a conventional promissory note in which he would be considered the maker and Bounds the payee. Edlund argues that the evidence shows that the note was actually security for the Frances Powell transaction.

■ The Texas Business and Commerce Code defines a promissory note. It provides that a writing is a negotiable instrument if it (1) is signed by the maker; (2) contains an unconditional promise or order to pay a sum certain; (3) is payable on demand or at a definite time; and (4) is payable to order or to bearer. TEX.BUS. & COM.CODE ANN. § 3.104(a) (Vernon 1968). It further provides that "[a] writing which complies with the requirements of this section is ... (4) a "note" if it is a promise other than a certificate of deposit." TEX. BUS. & COM.CODE ANN. § 3.104(b) (Vernon

1968). In short, a note is a written unconditional promise to pay another a certain sum of money at a certain time. *FDIC v. Eagle Properties, Ltd.,* 664 F.Supp. 1027, 1034 (W.D.Tex.1985).

Here, the $75,000 note was signed by Edlund and contained an unconditional promise to pay $75,000 to the order of Bounds. The note stated that it was "due on or before February 3, 1984." It was clearly designated a "promissory note." *See Clark v. Dedina,* 658 S.W.2d 293, 297 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). We conclude that the $75,000 note was a promissory note as defined by the Texas Business and Commerce Code and, accordingly, overrule Edlund's first point of error.

## DAMAGES

■ Edlund argues, in his second point of error, that the judgment is improper because there is no evidence that Bounds suffered any damages. The holder of a note need only establish that there is a note, that he is the legal owner and holder of the note, that the maker signed the note, and that a certain balance was due and owing on the note. *Clark,* 658 S.W.2d at 295. Since Bounds sufficiently established these elements, we overrule Edlund's second point of error.

## CONSIDERATION

■ In his third point, Edlund asserts that the trial court erred in granting Bounds's motion for instructed verdict and in rendering judgment against him on his affirmative defense that there was no consideration or a failure of consideration to support the $75,000 note. The record reveals that Edlund verified these affirmative defenses. *See* TEX.R.CIV.P. 93. A sworn plea of no consideration places the burden of proof on Edlund to show that there was none. *Clark,* 658 S.W.2d at 297. Our review shows that Edlund failed to meet this burden.

"Valuable consideration for a contract may consist of *either* a benefit to the promisor *or* a detriment to the promisee." *Clark,* 658 S.W.2d at 297 (emphasis in orig-

inal). Here, Edlund agreed to be liable on the $75,000 note to Bounds in return for Bounds's pledge of real property worth over $150,000 to secure the Frances Powell note. The pledge was necessary for K–John to acquire the Frances Powell brokerage firm. As president and shareholder of K–John, Edlund benefitted from the acquisition of the Frances Powell brokerage firm. *See Texas Export Dev. Corp. v. Schleder*, 519 S.W.2d 134, 138 (Tex.Civ. App.—Dallas 1974, no writ). Additionally, there was a detriment to Bounds in securing the Frances Powell note with property belonging to R–Co, a corporation in which he was a majority shareholder. Since Edlund failed to establish his affirmative defense of failure of or want of consideration, we overrule his third point.

## FRAUD

In his fourth point, Edlund asserts that the trial court erred in granting Bounds's motion for instructed verdict and rendering judgment against him on his affirmative defense that the note was obtained by Bounds through fraud. To establish fraud in the inducement sufficiently to allow an exception to the parol evidence rule, there must be a showing of some type of trickery, deceit, or device employed by the payee as well as a showing that the payee represented to the maker that he would not be liable. *Clark*, 658 S.W.2d at 296. Edlund testified at trial that Bounds never told him that he would have no responsibility on the $75,000 note. We overrule Edlund's fourth point of error.

## IMPROPER PARTY PLAINTIFF

Edlund's fifth point asserts that the trial court erred in granting Bounds's motion for instructed verdict and rendering judgment on his affirmative defense of improper party plaintiff. The record reveals that Edlund verified the affirmative defense of improper party plaintiff. *See* Tex. R.Civ.P. 93. However, Edlund has failed to prove this affirmative defense.

Edlund argues that R–Co was a necessary party since the sole consideration for the Frances Powell note was an asset owned by R–Co. A party must be joined if (1) his absence prevents granting complete relief to existing parties in the lawsuit, or (2) he claims an interest in the subject matter and his absence in the lawsuit may impair or impede his ability to protect this interest or leave the parties already present in the lawsuit subject to substantial risk of incurring double, multiple, or inconsistent obligations. Tex.R.Civ.P. 39.

Here, R–Co's absence does not prevent the existing parties from obtaining complete relief. The $75,000 note is between Edlund, the maker, and Bounds, the payee. Nowhere on the note is R–Co mentioned. Any claim on the $75,000 note can be adjudicated without R–Co's presence. Additionally, we cannot conclude that R–Co's interests are impaired or that Edlund was subjected to substantial risk of incurring double liability. "Under the provisions of ... Rule 39 it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined." *Cooper v. Texas Gulf Ind., Inc.*, 513 S.W.2d 200, 204 (Tex.1974). We overrule Edlund's fifth point.

## STATUTE OF LIMITATIONS

Edlund's sixth and seventh points of error contend that the trial court erred in granting Bounds's motion for instructed verdict and in denying Edlund's motion for judgment n.o.v. and motion for new trial. Edlund argues that the lawsuit was barred by the four-year statute of limitations. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.-004(a)(3) (Vernon 1986). The instrument consisted of a preprinted form wherein blank lines were completed with typewritten words. The first line of the instrument reads: "$ 75,000.00 Plano, Texas, August 24 A.D. 1981." The second line begins: "Due upon demand after date...." Edlund argues that this language makes the instrument a demand note which matured on the date of execution. *See Loomis v. Republic Nat'l Bank of Dallas*, 653 S.W.2d 75, 77 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) (limitations begins to run on a

demand note on the date of making). However, at the lower left-hand corner of the note, the printed word "Due" precedes a blank line. Typed upon the blank line are the words: "On or before February 3, 1984."

 It is well established in Texas that the rules of construction governing contracts are applicable to notes, and a note must be construed as a whole. *Amarillo Nat'l Bank v. Dilday*, 693 S.W.2d 38, 41 (Tex.App.—Amarillo 1985, no writ). When the provisions of a contract appear to conflict, they should be harmonized if possible to reflect the intentions of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983). The parties to a contract intend every clause to have some effect and a court will not strike down any portion of the contract unless there is an irreconcilable conflict. *Id.* If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

 We find no ambiguity in the terms of the $75,000 note. The $75,000 was due, at the latest date, on February 3, 1984. Edlund could prepay this amount at his option. *See Fortson v. Burns*, 479 S.W.2d 722, 724 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.). The words "on or before" on promissory notes are well understood to mean, "immediately at or at any time in advance of" a period named. *Lovenberg v. Henry*, 104 Tex. 550, 140 S.W. 1079, 1080 (Tex.1911). Upon the passing of the due date of February 3, 1984, the option ceased to prepay and the note became an obligation to pay at all events. *See id.* When a note is payable at a definite time, limitations begins to run at the maturity of the note. *Loomis*, 653 S.W.2d at 77. Here, the note matured on February 3, 1984. As this lawsuit was filed on June 23, 1987, filing occurred within the four-year statute of limitations applicable to actions for debt. We overrule Edlund's sixth and seventh points of error.

## CONVERSION

 In his eighth point of error, Edlund asserts that the trial court erred in granting Bounds's motion for instructed verdict and rendering judgment against Edlund on his counterclaims for a constructive trust, damages, or distribution of the net assets of K–John and/or Zanz. Bounds responds that (1) Edlund lacks standing to sue because his claims belong to the corporations; and (2) Edlund adduced no evidence of what assets were purportedly converted, their value, and the date of their conversion. In his motion for rehearing, Bounds also asserts that Edlund's conversion claim is barred by limitations.

On appeal, Edlund argues that he is entitled to an accounting, a constructive trust, and damages for Bounds's "failure to distribute the net assets resulting from the winding up of affairs of K–John and Zanz." However, Edlund's second amended answer and counterclaim states:

> On February 20, 1984, K–John forfeited its charter and was involuntarily dissolved pursuant to Article 7.010(B) of the Texas Corporations Act. At that time, Plaintiff seized control of all assets of K–John and converted them to his personal benefit. Defendant hereby sues Plaintiff for 49% of all assets of K–John, for an accounting of all assets of K–John between March 1982 and the present, and for a constructive trust over all assets which should have been allocated by Plaintiff to Defendant's 49% interest, the value of which Defendant asserts to be in excess of $75,000 before interest.

Similar arguments were made with respect to Zanz. When Bounds asserted his motion for instructed verdict with respect to Edlund's counterclaims, Bounds formulated his arguments based on a conversion claim. Edlund responded to the conversion issues and added: "It would be our position once the assets come out of that corporation, [Bounds] has got to give Mr. Edlund his half, seems obvious."

Allegations contained in the pleadings define the nature and character of a suit. *Bobby Smith Brokerage, Inc. v. Bones*, 741 S.W.2d 621, 622 (Tex.App.—Fort Worth

1987, no writ). Here Bounds had the right to assume that the case made by the pleadings was the only case he was called upon to defend. *See id.* Edlund must recover on the basis on which he sued and upon proof of facts stated in his pleadings, and he cannot recover through a right not asserted. *Id.* Therefore, Edlund's request for the remedies of a constructive trust, damages, or distribution stem from a claim of conversion as set forth in his second amended answer and counterclaim.

The record shows that the Secretary of State revoked K–John's right to do business on September 15, 1983, and its charter on February 20, 1984, for failure to file a franchise tax report. The effect of the Secretary of State's forfeiture is summarized as follows:

> The Supreme Court of Texas has held that where the Secretary of State has entered on the record in his office forfeiture of the right of the corporation to do business in this state, the charter of the corporation has not thereby been cancelled nor has the corporation been dissolved. The effect of such a forfeiture is to prohibit the corporation from doing business in the state, and to deny to it the right to sue or defend in any court of the state except in a suit to forfeit its charter. The legal title to the assets remains in the corporation, but the beneficial title to the assets of the corporation is in the stockholders. This being true, and since the right to sue has been denied to the corporation by forfeiture, the stockholders, as beneficial owners of the assets of the corporation, may prosecute or defend such actions in the courts as may be necessary to protect their property rights.

*Regal Constr. Co. v. Hansel,* 596 S.W.2d 150, 153 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (citing *Humble Oil & Refining Co. v. Blankenburg,* 149 Tex. 498, 235 S.W.2d 891, 894 (Tex.1951)). Since Edlund is one of the beneficial owners of the assets of K–John, Edlund is entitled to pursue his cause of action for conversion against Bounds to protect his property right. *See Regal Constr. Co.,* 596 S.W.2d at 153. Concluding that Edlund is so entitled, we now address Bounds's assertion that Edlund presented no evidence of what assets were purportedly converted, their value, and the date of the conversion of K–John's assets.

■■■■■ Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the property owner's rights. *Tripp Village Joint Venture v. MBank Lincoln Centre, N.A.,* 774 S.W.2d 746, 750 (Tex. App.—Dallas 1989, writ denied). The measure of damages is the value of the property at the time and place of the conversion. *Matter of Village Mobile Homes, Inc.,* 947 F.2d 1282, 1283 (5th Cir.1991); *Prewitt v. Branham,* 643 S.W.2d 122, 123 (Tex.1982) (per curiam). An action for the conversion of money will lie if the money can be identified as a specific chattel. *Eckman v. Centennial Sav. Bank,* 757 S.W.2d 392, 398 (Tex.App.—Dallas 1988, writ denied). "When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate." *Id.* An action for the conversion of money may be brought where money is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper. *Houston Nat'l Bank v. Biber,* 613 S.W.2d 771, 774–75 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

At trial, Bounds testified that he owned fifty-one percent and Edlund owned forty-nine percent of K–John. They began losing money and agreed to dissolve K–John in 1982. Bounds was charged with the duty of closing up the offices, collecting any funds owed to K–John, and paying any debts.

Edlund testified about an exhibit admitted into evidence representing three pages of figures that Bounds presented to Edlund in January, 1987, when Bounds requested payment of $75,920.09. This document reflects a total of $20,433.80 in fees collected and $5,749.55 paid. The figures are itemized with a description of each transaction, and then summarized as follows:

Note—Date Aug. 24, 1981

$75,000 @ 10% for 9 mos. – 5,626.00

47,651.54 @ 10% 4 yrs. 9 mos.
Int. through Feb. 1, 1987 – 22,637.55
(397.15 per mo.)

Prip. – 47,657.54

 75,920.09

Additional documents were admitted into evidence to demonstrate that some of K–John's financial obligations were relieved. Another exhibit reflected that K–John received $25,000 on March 18, 1982 from Sanger Suburban Realty, Inc. for the Coit Road office. This figure was not reflected in the document shown to Edlund in January, 1987. Edlund also stated that Elizabeth Carrol Enterprises bought their Plano office on October 31, 1981. Bounds's personal financial statement reflects a $76,800 note receivable from Elizabeth Carrol Enterprises.

Bounds's testimony included the explanation of his June 31, 1982 personal financial statement reflecting an asset of $360,000 for the Gallery of Homes franchise. Bounds stated that the asset was probably left over from K–John. Bounds also testified that a note receivable from Hallmark Gallery of Homes for $10,000 was due to the sale of a K–John office.

Viewing the evidence in the light most favorable to Edlund, the party against whom the verdict was instructed, we find that there is sufficient evidence to raise a fact issue on Edlund's counterclaim for conversion on the note receivables and the Gallery of Homes franchise. These are specifically identified chattels of which Edlund adduced evidence of their value on the date of their conversion. Bounds's personal financial statement reflects Bounds's valuation of the Gallery of Homes franchise. Additionally, the actual sales price of property provides some evidence of fair market value. *See Religious of the Sacred Heart of Texas v. City of Houston,* 836 S.W.2d 606, 616 (Tex.1992). However, any claims involving the conversion of money must fail because they involve alleged indebtedness that can be discharged by the payment of money generally.

We next address Bounds's contention that the conversion claim was barred by limitations. In Bounds's motion for instructed verdict, Bounds asserted that Edlund failed to comply with TEX.R.CIV.P. 42 and TEX.BUS.CORP.ACT ANN. art. 5.14(B)(2) (Vernon 1980). Bounds also contended that there was no evidence of the value of the assets, dates of the conversion, and that Bounds seized the assets. The same arguments were made with respect to Zanz. Bounds did not assert his limitations defense although he did raise the issue in his pleadings. In order to preserve error for appellate review, a party must obtain a ruling upon a timely and specific request, objection, or motion for a ruling. TEX. R.APP.P. 52(a). Since Bounds did not obtain the trial court's ruling on his limitations defense, he has failed to preserve error. We sustain Edlund's eighth point of error as to K–John.

We do not reach the same conclusion regarding Edlund's claim that Bounds converted the assets of Zanz. No evidence was introduced at trial that Zanz's right to do business had been revoked or that its charter was forfeited. We must, therefore, assume that Zanz, unlike K–John, is a fully functional corporation. When a corporation is fully functional, a cause of action for the breach of a director's fiduciary duties normally belongs to the corporation and cannot be brought by a shareholder, unless the shareholder establishes that he is owed an individual duty by the corporation, its officers, directors, or majority shareholders. *Schautteet v. Chester State Bank,* 707 F.Supp. 885, 887 (E.D.Tex.1988). Here, Edlund has failed to establish that he was owed an individual duty by Bounds in any transactions regarding Zanz.

A derivative suit may be brought by Edlund on behalf of Zanz if his pleadings allege (1) that he was a record or beneficial owner of shares at the time of the transaction of which he complains, and (2) specifically his efforts to have suit brought for the corporation by the board of directors, or the reasons for not making such efforts. *See* TEX.R.CIV.P. 42; TEX.BUS.CORP.ACT ANN.

art. 5.14(B)(2) (Vernon 1980). Since Edlund failed to comply with these derivative suit requirements, we hold that the trial court properly granted Bounds's motion for instructed verdict and rendered judgment against Edlund on his claim for conversion of Zanz's assets.

We sustain Edlund's eighth point of error asserting that the trial court erred in granting Bounds's motion for instructed verdict and rendering judgment against him on his counterclaims for the conversion of nonmonetary assets of K–John. We overrule this point as to Zanz.

### SUPPLEMENTAL TRANSCRIPT

On rehearing, Edlund has requested to supplement the record with his first amended answer and counterclaim to show the date on which he first asserted his conversion counterclaim. This request was in response to Bounds's contention that the conversion claim is barred by limitations. Due to our disposition of Bounds's limitations argument, we deny Edlund's motion to supplement the record. *See K & S Interests v. Texas Am. Bank/Dallas*, 749 S.W.2d 887, 891–92 (Tex.App.—Dallas 1988, writ denied) (op. on reh'g).

### THE STRINGER ASSIGNMENT

■ In his ninth and tenth points, Edlund contends that the trial court erred in granting Bounds's motion for instructed verdict and rendering judgment on his affirmative defense of offset by assignment. Before trial, Edlund obtained an assignment from Bounds's ex-wife, Suzanne Stringer, of any community property interest she may have had in the $75,000 note. If the divorce decree did not partition the note, Edlund argues, then Bounds and Stringer are joint owners of the note. To the contrary, Bounds argues that the divorce decree awards the note to him and, therefore, the trial court acted properly.

Bounds cites the court to the following portions of his divorce decree awarding Bounds, as his sole property: "Any and all sums ... related to any profit-sharing plan, retirement plan, pension plan, ... or other benefit program existing by reason of [Bounds's] past, present, or future employment [and] all stocks, bonds, and securities registered in the name of [Bounds]."

Property held or acquired by a spouse during marriage is presumed to be community property. *Southern Title Guar. Co., Inc. v. Prendergast*, 494 S.W.2d 154, 157 (Tex.1973); *see also* Tex.Fam.Code Ann. § 5.02 (Vernon Supp.1992). As the note in this case was acquired during Bounds's marriage, it is presumed to be community property. It was not disposed of by the divorce decree—the above cited portions of the divorce decree do not apportion the $75,000 note.

Next, we address the validity of the Stringer assignment absent the disposition of the $75,000 note in the divorce decree. Texas common law once provided that when a divorce decree did not dispose of community property, the parties became owners of the property as tenants in common. Each owned an undivided one-half interest in the property. *Thompson v. Thompson*, 500 S.W.2d 203, 207 (Tex.Civ. App.—Dallas 1973, no writ). However, sections 3.90 and 3.91 of the Family Code, added by the Legislature in 1987, now require a different result.[3]

Under section 3.63 of the Family Code, a court shall, in a decree of divorce, order a division of the estate of the parties in a manner that the court deems just and right having due regard for the rights of each party. Tex.Fam.Code Ann. § 3.63 (Vernon Supp.1992). Should the court not do so, section 3.90 provides, in part: "Property not divided or awarded to a spouse in a final decree of divorce ... may be divided in a suit under this subchapter."[4] Tex.

---

3. The Legislature changed the application of these sections so they apply to decrees of divorce and annulment rendered *before,* on, or after November 1, 1987. Act approved June 14, 1989, 71st Leg., R.S., ch. 371, 1989 Tex.Gen. Laws 1466 (emphasis added).

4. The statute further provides: "(b) The suit may be brought by either former spouse. (c) The suit must be filed before two years after the date on which a former spouse unequivocally repudiates the existence of the ownership interest of and communicates that repudiation to the other spouse." Tex.Fam.Code Ann. § 3.90(b), (c)

FAM.CODE ANN. § 3.90(a) (Vernon Supp. 1992). Section 3.91 provides, in part: "If a final decree of divorce or annulment rendered by a Texas court failed to dispose of property subject to division under Section 3.63 of this code ..., the court shall divide the property in a manner that the court deems just and right." TEX.FAM.CODE ANN. § 3.91(a) (Vernon Supp.1992).

Thus, the "just and right" division rule applies also to property not covered by the final divorce decree. Stringer has no ascertainable interest in the note until there is a division under the "just and right" standard of section 3.63 of the Family Code. A suit filed pursuant to section 3.90 is a prerequisite to determine Stringer's assignable interest in the note. As there is no evidence of a judgment determining Stringer's ownership interest in the note, we cannot assign error to the trial court's judgment against Edlund on his affirmative defense of offset by assignment. We overrule Edlund's ninth and tenth points of error.

## EXCLUDED TESTIMONY

█ In his eleventh point of error, Edlund asserts that the trial court erred in excluding the testimony of Richard Euting, a forty-nine percent shareholder of R–Co. In his bill of exceptions, Euting testified that he invested in the R–Co property, but Bounds had not. Bounds was the controlling owner of R–Co. Euting was unaware that Bounds made an unauthorized pledge of the R–Co property as security for the Frances Powell note. Euting would not have agreed to such a pledge. Euting stated that he was also unaware that the property had been sold until he researched the deed records at the courthouse. Euting stated that he would assign Edlund his stock in R–Co "if it would help [Edlund] in his situation." Euting further stated that Bounds offered to transfer the R–Co property to him if he would assume all indebtedness against it. He refused the offer. Bounds objected to the testimony as being

irrelevant and likely to confuse the issues before the jury. Edlund's attorney, outside of the jury's presence, said that he just wanted to "disclose to the jury that Mr. Edlund was fraudulently induced to sign the note and there was no consideration given by Mr. Bounds."

█ Error is not shown in the exclusion of evidence unless the complaining party brings before the appellate court a record that clearly shows not only what the evidence would have been if admitted, but also its relevancy. *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 580 S.W.2d 850, 861 (Tex.Civ.App.—Corpus Christi), *rev'd on other grounds*, 592 S.W.2d 340 (Tex. 1979). Additionally, Edlund has the burden of proving that reversible error occurred by demonstrating that the exclusion of Euting's testimony was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX. R.APP.P. 81(b)(1); *Rio Grande Valley Sugar Growers, Inc.*, 580 S.W.2d at 861. We find that Edlund has failed to demonstrate the relevancy of this testimony and failed to show that its exclusion resulted in an improper judgment. We overrule Edlund's eleventh point of error.

## CREDITS AGAINST THE NOTE

█ Edlund's twelfth and thirteenth points of error challenge the trial court's failure to submit a question to the jury asking it to determine what amount of the note remained unpaid. Edlund testified at trial that in their agreement to dissolve K–John, he and Bounds would "settle out of the relationship on an equal basis." Edlund also stated that, although Bounds may not have stated it specifically, he agreed to forgive the $75,000 note as part of the settlement. Edlund further stated:

The terms of the settlement that we had reached was that [Bounds] was going to stay on and finish up closing the various offices, collect the money; and that based upon how much I was owed and how much he was owed, that it would

(Vernon Supp.1992). We make no finding as to whether the statute of limitations now prevents

a suit to determine proper division of the note.

about cover the debts and I was going to take the difference, which I did take, and my accountant took this and I wrote the rest of it off in income tax as a loss. * * * I think it was over forty thousand dollars.

We find that this evidence raised a fact issue as to Edlund's affirmative defense of accord and satisfaction. This issue was properly submitted to the jury. We find nothing in the record to support the submission of a jury question to determine the amount still unpaid under the note. No evidence was introduced that any payments were made on the note or that any credits were applied to the note. Accordingly, we overrule Edlund's twelfth and thirteenth points of error.

## ATTORNEY'S FEES

Bounds sets forth three cross points challenging the jury's finding of one dollar as reasonable attorney's fees. Bounds bases his attack on the theories that (1) the jury finding is immaterial, (2) the amount of the fees was proven as a matter of law, and (3) the finding is against the great weight and preponderance of the evidence. In reviewing a "matter of law" challenge, we use a two-pronged test. First, we examine the record for evidence that supports the jury's findings, while ignoring all evidence to the contrary. Second, if there is no evidence to support the factfinder's answer, then we examine the entire record to see if the contrary proposition was established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

The evidence consists of the promissory note itself and the testimony of Bounds's attorney. The relevant portion of the note provides: "It is further expressly agreed that if this note . . . is collected . . . through other legal proceedings . . . to pay the own-

er or holder of this note fifteen per cent additional on the principal and interest then due hereon as attorney's fees." Bounds's attorney testified about the amount and kind of work done and the reasonableness of the fees he charged Bounds. On cross-examination, Edlund only asked Bounds's attorney how much he had been paid to date and whether that amount related solely to the lawsuit. Since Edlund presented no evidence on the unreasonableness of the requested fees, nor did he prove a lesser amount that was reasonable under the circumstances, he is not entitled to a fee reduction. *F.R. Hernandez Constr. & Supply Co., Inc. v. National Bank of Commerce of Brownsville,* 578 S.W.2d 675, 677 (Tex.1979); *see also Long v. Tascosa Nat'l Bank of Amarillo,* 678 S.W.2d 699, 706 (Tex.App.—Amarillo 1984, no writ).

We hold that Bounds proved his entitlement to attorney's fees based on the contractual provision as a matter of law. We render judgment that Bounds recover fifteen percent of the amount of principal and interest *owing at the time of judgment* as attorney's fees. Bounds is not entitled to recover an additional amount for attorney's fees for appealing the judgment.[5]

## SUPERSEDEAS BOND

In his motion for reconsideration, Bounds requests that we enter judgment against the surety on Edlund's supersedeas bond. Edlund responds that judgment should not be entered against the surety because our remand of the counterclaim renders the amount of the surety's liability uncertain. Edlund further argues that it is improper to render judgment against a surety without a final judgment. He asserts that Bounds's judgment against him cannot be final until the trial court disposes of his counterclaim.

---

5. Bounds, in his pleadings, relies on the contractual provision for his claim for attorney's fees. He did not plead an entitlement under the statute which allows for attorney's fees in suits on a written contract. *See* Tex.Civ.Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1986). Thus, Bounds is entitled only to fifteen percent of the amount owing on the note. Additionally, being limited by his pleadings, there was no proper question

before the trial court on the issue of Bounds's attorney's fees in case of appeal. Edlund properly objected to the submission of question number one. Subparts (b), (c), and (d) of question number one, requesting findings for reasonable and necessary attorney's fees if the case was appealed, have no basis in the pleadings and should not have been presented to the jury. *See* Tex.R.Civ.P. 278.

When a court of appeals affirms the trial court's judgment, it shall render judgment against the appellant and the sureties on his appeal or supersedeas bond, if any, for such costs as are taxed against him. Tex.R.App.P. 82. The purpose of a supersedeas bond is to secure the appellee and abate the remedies he would otherwise have for realizing his judgment. *Carter Real Estate & Dev., Inc. v. Builder's Serv. Co.*, 718 S.W.2d 828, 830 (Tex. App.—Austin 1986, no writ). A supersedeas bond is not intended to secure speculative damages or damages that have not been finally determined. *Hughes v. Habitat Apartments*, 828 S.W.2d 794, 795 (Tex. App.—Dallas 1992, n.w.h.). Execution cannot issue on a judgment that is not final. *Id.* A judgment for a plaintiff that does not dispose of a defendant's counterclaim is not a final judgment. *Springwoods Shopping Ctr., Inc. v. University Sav. Ass'n*, 610 S.W.2d 177, 178 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

Since in this case Edlund's counterclaim is still pending, the judgment is not final, and we cannot render judgment against the surety on the supersedeas bond. Accordingly, our judgment will reflect that the surety's obligations on the supersedeas bond are discharged.

### DISPOSITION

We affirm the trial court's judgment as to Edlund's liability under the note, his affirmative defenses, and his counterclaim on the conversion of Zanz's assets. We modify the attorney's fees award and we render judgment that Edlund pay, as attorney's fees, fifteen percent of the trial court's award of principal and interest owing at the time of judgment, and affirm that part of the judgment as modified. We reverse the judgment on Edlund's counterclaim for conversion of K–John's assets and remand that portion of the cause for a new trial in accordance with this opinion. We grant Edlund's motion for rehearing and Bounds's motions for rehearing and reconsideration. We deny Edlund's motion to supplement the record. The parties are ordered to bear their own costs incurred by reason of this appeal. The obligations of the supersedeas bond surety, Fidelity and Deposit Company, are ordered discharged.