Ray JOBE, Appellant,

v.

PENSKE TRUCK LEASING CORP., d/b/a Hertz Penske Truck Rental and Leasing, and d/b/a Hertz Penske Truck Leasing, Inc., Appellee.

No. 05–93–00687–CR.

Court of Appeals of Texas, Dallas.

July 18, 1994.

court erred in directing a verdict for Penske on his marketing defect claim and in failing to submit a jury issue on whether a marketing defect caused his injury. We conclude that the trial court erred.

## FACTUAL BACKGROUND

While helping a friend load furniture on a truck rented from Penske, Jobe's thumb was smashed between the framing of the truck and a metal latch used to lock the truck's door. This door opens and closes by rolling up and down, very similar to a garage door. A spring device acts as a balance so that the door does not roll up or down too quickly.

There is a metal latch mechanism on the door. A metal hook is also part of this latch device used to lock the door. The latch rotates in a clockwise motion to lock the cargo door and a counter-clockwise motion to unlock the door. When the latch is rotated to a locked position, the metal hook rotates downward into an open slit immediately below the latch and causes the cargo door to remain locked.

On July 16, 1988, Jobe was injured by a defective mechanism on the rear cargo door of Penske's rental truck. The door is designed to open and close by rolling up and down. A spring device inside the truck acts as a balance so that the door can be raised and lowered with comparative ease. On this particular occasion when the latch mechanism was released, the cargo door raised very fast and jammed into the upper part of the door opening. A video tape introduced at trial shows that a large metal latch locks the cargo door down. A large hook which is a part of the latch mechanism detaches from the bottom door frame allowing the door to move upward. The door weighs approximately 380 pounds. A Penske representative admitted that the balancing mechanism on this particular truck was defective in that the door sprung upwards rather than allowing

Raymond Jobe, Dallas, for appellant.

J. Robert Miller, Jr., Julie H. Brown, Dallas, for appellee.

Before McGARRY, EVANS [1] and NYE [2], CJJ.

## OPINION

NYE, Chief Justice (Retired).

Appellant Ray Jobe appeals the trial court's directed verdict and take nothing judgment rendered in favor of appellee Penske Truck Leasing Corporation. In two points of error,[3] Jobe contends that the trial

1. The Honorable Frank G. Evans, Chief Justice, Court of Appeals, First District of Texas at Houston, Retired, sitting by assignment.

2. The Honorable Paul W. Nye, Chief Justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi, Retired, sitting by assignment.

3. Jobe actually brought forth three points of error in his brief. However, during oral argument, Jobe conceded that his first point of error was without merit. Consequently, we do not address it.

the door to move easily when manually actuated. Normally, when the door is first unlatched, it should move upward only a few inches.

The video tape also showed that when this particular door was unlocked, it moved upward and caused the rotating latch mechanism to wedge against some internal part of the box of the truck, causing the door to jam in an open position. Because the latch mechanism is not visible when the door is in its full upright position, it is not apparent to the person operating the door that it is actually jammed. When Jobe pushed and/or pulled on the opened, jammed door, the unseen, unsecured latch handle swung over and smashed Jobe's thumb against the inside upper lip of the truck's box causing him to have a broken thumb. Jobe received emergency medical treatment as a result of the injury to his thumb.

Jobe contends that Penske should have provided a warning to completely rotate the latch to its secured position. He maintains that if such a warning had been provided, he would have secured the latch and it would not have freely rotated and caused the door to jam, despite any defect in the spring device. He contends that his injury was caused by the absence of an adequate warning.

Jobe requested a jury question on the existence of a marketing defect for Penske's failure to provide an adequate warning; however, the trial judge denied the request. At the close of the evidence, the trial court granted a directed verdict for Penske on the marketing defect claim.

### THE DIRECTED VERDICT

■■■ Jobe asserts that the trial court erred in granting a directed verdict for Penske on his marketing defect claim for failure to adequately warn. We construe this complaint to address a strict products liability cause of action rather than one based on a negligence theory. When reviewing a directed verdict, we consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences, and giving the losing party the benefit of all reasonable inferences created by the evidence. *Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex.1988); *Davis v. Mathis*, 846 S.W.2d 84, 86 (Tex. App.—Dallas 1992, no writ). On appeal, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). A directed verdict is proper when the evidence is insufficient to raise a fact issue as to one or more fact propositions that must be established for the opponent to be entitled to judgment. *Edlund v. Bounds*, 842 S.W.2d 719, 724 (Tex.App.—Dallas 1992, writ denied). It is error for a trial court to instruct a verdict when a material issue is raised by the evidence. *Id.* at 724.

■■■ A marketing defect exists when a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use. *USX Corp. v. Salinas*, 818 S.W.2d 473, 482 (Tex.App.—San Antonio 1991, writ denied). To avoid a directed verdict, Jobe had to present evidence on each of the following elements: (1) the existence of a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the product supplier knew or should have known of a risk of harm; (3) the absence of a warning or instruction rendered the product unreasonably dangerous to the ultimate user or consumer; and (4) the existence of a causal nexus between the failure to warn or instruct and his injury. *Id.* at 482–83. Thus, in a marketing defect case, a plaintiff must raise a fact issue on whether a warning or instruction should have been provided. *Id.* at 483.

■■■ Viewing the evidence in the light most favorable to Jobe and drawing all reasonable inferences in his favor, we find some evidence on each of the required elements of a marketing defect claim. With respect to the first element, the evidence established that the manufacturer provided Penske with written instructions regarding the proper operation of the latch mechanism but that these instructions were not passed on to customers renting trucks from Penske. In fact, a

Penske representative admitted that their printed literature furnished to its customers contained no information on the proper operation of the latch device. Further, although there was testimony that the rental representative was required to show Penske customers how to operate the latch mechanism at the time of rental, there was no evidence that this was actually done. We conclude that this evidence is sufficient to raise a fact issue regarding the existence of a risk of harm inherent in the product.

■ As to the second element, Jobe presented evidence that Penske had knowledge of at least three similar incidents. We conclude that a fact issue was raised regarding Penske's knowledge of a risk of harm.

■ As to the third element, Jobe presented evidence that the latch mechanism could be deemed unreasonably dangerous without a warning. He offered the testimony of Kenneth Moore, a district manager for Penske. Moore conceded that it would make sense, and be helpful to customers, to provide a warning that the latch should be completely rotated into a secured position prior to opening the cargo door. Even more compelling was the video tape. The tape suggests that one possible reason the door jammed was the failure to completely rotate the latch mechanism into a secured position. It suggests that if the latch is secured, the door operates properly. The tape further suggests that without properly securing the latch, the door jams, forcing the operator to pull and push on the door to release it. No warning or instruction label was on the truck informing operators how to properly use the latch. Moreover, as previously noted, Penske received instructions from the manufacturer on how to properly operate the latch mechanism; nevertheless, Penske failed to pass these instructions on to its customers. We consider the evidence presented to be ample probative evidence to raise a fact issue on whether the absence of a warning made the latch device unreasonably dangerous.

■ As to the last element, there is a rebuttable presumption that Jobe would have read and heeded any warning provided by Penske. *See Magro v. Ragsdale Bros., Inc.,*

721 S.W.2d 832, 834 (Tex.1986); *see also Dresser Indus., Inc. v. Lee,* 880 S.W.2d 750 (1993). Jobe testified that he would have read and heeded a warning had one been provided; therefore, the entire incident would have been prevented. We conclude that Jobe presented a fact issue regarding a causal nexus between Penske's failure to warn and his injury.

We find that Jobe presented sufficient evidence on each element of his marketing defect claim to raise a fact issue that should have been presented to the jury. The trial court erred in directing a verdict against Jobe. We sustain Jobe's second point of error.

## MARKETING DEFECT ISSUE

■ In his third point of error, Jobe contends that the trial court erred in failing to submit a jury issue inquiring whether a marketing defect was the producing cause of his injury. He also complains that the trial court erred in failing to instruct the jury regarding the presumption that if a warning had been provided he would have read and heeded it. A party is entitled to the submission of jury issues when the pleadings and the evidence raise a fact issue. TEX.R.CIV.P. 278; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992).

When we consider all of the evidence in the light most favorable to Jobe, disregard all contrary evidence and inferences, and give Jobe the benefit of all reasonable inferences created by the evidence herein, we must conclude that the trial court erred in directing the verdict for Penske instead of submitting the issue of the marketing defect to the jury.

■ With respect to Jobe's requested instruction, we note that a trial court has broad discretion in deciding whether and how to submit an instruction to the jury. *See Weitzul Constr., Inc. v. Outdoor Environs,* 849 S.W.2d 359, 365 (Tex.App.—Dallas 1993, writ denied). We further note that instructions are proper when they aid the jury in answering the submitted issues. *Louisiana & Ark. Ry. Co. v. Blakely,* 773 S.W.2d 595,

598 (Tex.App.—Texarkana 1989, writ denied).

Presumably, the trial court did not provide this jury instruction because it concluded, albeit erroneously, that Jobe was not entitled to a jury issue on his marketing defect claim. Submission of jury instructions is within the discretion of the trial court. Here, the trial court has not had the opportunity to exercise its discretion. It is not necessary for us to suggest .to the able trial court a proper instruction. As such, we decline to express our opinion on this issue.

Jobe's third point of error is sustained. This case is reversed and remanded to the trial court for further proceedings consistent with this opinion.