

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-15-00339-CV

K. HOVNANIAN HOMES–DFW, LLC                  APPELLANT

V.

THE POWDERMAKER FIRST                        APPELLEE
FAMILY LIMITED PARTNERSHIP

----------

## FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. 14-00737-211

----------

## MEMORANDUM OPINION[1]

----------

Appellant K. Hovnanian Homes–DFW, LLC (Hovnanian) appeals from the trial court's judgment, entered after a bench trial, in favor of appellee The Powdermaker First Family Limited Partnership (Powdermaker) on Powdermaker's breach-of-contract claim. Because we conclude that the trial

---

[1]*See* Tex. R. App. P. 47.4.

court improperly interpreted the contract, we reverse the trial court's judgment and remand for further proceedings.

## I. BACKGROUND

### A. CONTRACT OF SALE AND AMENDMENT

On July 15, 2013, Powdermaker and Hovnanian signed a contract of sale (the contract) under which Powdermaker agreed to sell 100 acres of real property to Hovnanian. Hovnanian placed $100,000 in escrow with the title company as an earnest-money deposit, which would be applied as a credit against the eventual purchase price of $7 million. Hovnanian was contractually obligated to deposit $400,000 in additional earnest money once Hovnanian received "zoning and development approvals." In section 5.4 of the contract, which was entitled "Approval of Inspections," Hovnanian could unilaterally terminate the contract by a certain date if it had not previously given Powdermaker written notice of its intent to continue the contract:

> If [Hovnanian] determines at any time prior to the expiration of the Inspection Period[2] that the Property is not satisfactory to [Hovnanian] for any reason or no reason, in [Hovnanian's] sole discretion, or [Hovnanian] has not obtained the Zoning and Development Approvals then [Hovnanian] may terminate this Contract by delivering written notice of termination to [Powdermaker] prior to the end of the Inspection Period. Additionally, if [Hovnanian] shall fail to give [Powdermaker] written notice on or prior to the end

[2]The inspection period was contractually defined as "a period of time commencing on the Effective Date and ending at 6:00 p.m. Dallas, Texas, time on the ninetieth (90th) day after the Effective Date." The effective date was the date the title company received "a fully executed counterpart" of the contract. The record shows that the title company received the contract on July 15, 2013.

2

of the Inspection Period that [Hovnanian] wishes to continue this Contract then this Contract shall automatically terminate at the end of the Inspection Period. If [Hovnanian] properly terminates this Contract or if this Contract automatically terminates pursuant to this Section 5.4, then this Contract shall be terminated, the Title Company shall return the Earnest Money Deposit to [Hovnanian], and neither party shall have any further rights, duties or obligations. . . . If [Hovnanian] timely delivers to [Powdermaker] written notice of [Hovnanian's] intention to continue this Contract, the conditions of this Section 5.4 shall be deemed satisfied, and [Hovnanian] may not thereafter terminate this Contract pursuant to this section 5.4.

Hovnanian could extend the contractual inspection period upon notice to Powdermaker:

[I]n the event [Hovnanian] has not obtained the Zoning and Development Approvals prior to the then current expiration date of the Inspection Period, [Hovnanian] shall have the right to extend the Inspection Period for up to three (3) periods of thirty (30) days each by . . . sending written notice to [Powdermaker] of such election to extend the Inspection Period before the then scheduled expiration date of the Inspection Period, and . . . sending written notice to the Title Company to release [$25,000] of the Earnest Money Deposit then on deposit with the Title Company to [Powdermaker] in connection with the first thirty (30) day extension, [$10,000] with respect to the second thirty (30) day extension and [$20,000] with respect to the third thirty (30) day extension.

Section 5.4 further provided for liquidated damages for Powdermaker if Hovnanian terminated the contract after notifying Powdermaker of its intent to continue the contract:

However, should [Hovnanian] cause this Contract to terminate . . ., [Hovnanian] shall pay [Powdermaker] the sum of $250,000.00 within five (5) days of termination . . . . [Hovnanian's] obligation to pay $250,000.00 . . . shall in no way limit, replace, or reduce [Powdermaker's] right to additional funds from the Earnest Money Deposit.

3

The general requirements for any provided notices were governed by section 14.5 of the contract:

> Any notice provided or permitted to be given under this Contract must be in writing and may be served by depositing the same in the United States Mail, postage prepaid, certified or registered mail with return receipt requested, or by delivering the same in person to the party to be notified via a delivery service, Federal Express or any other nationally recognized overnight courier service that provides a return receipt . . ., or by facsimile copy transmission with proof of receipt.

Finally and particularly relevant to the appeal before us, section 14.16 provided that the contract could be amended and that any amendment or modification "must be made in writing and signed or acknowledged in writing by both parties."

On October 10, 2013, Hovnanian and Powdermaker signed an amendment to the contract, entitled "SECOND AMENDMENT TO CONTRACT OF SALE" (the amendment).[3] The amendment "modified and amended" the contract to provide that any reference to "Inspection Period" in the contract would mean "a period of time commencing on the Effective Date and ending at 6:00 p.m. Dallas, Texas, time on November 13, 2013." The amendment further provided that "each and every of the terms and provisions of the Contract [not modified by the amendment] are unchanged and continue[] in full force and effect." In November 2013, Hovnanian and Powdermaker by email discussed

___

[3]This amendment was a "second" amendment, and Powdermaker alleged that the first amendment was a similar amendment to the inspection period. The first amendment is not a part of the record on appeal and, indeed, is not at issue.

4

amending the contract to again extend the inspection period, but this amendment was never agreed to or signed.

No further action was taken on the contract as amended and Hovnanian believed that the contract had automatically terminated without penalty under section 5.4 at the end of the amended inspection period on November 13, 2013. As a result, Hovnanian did not pay Powdermaker the $250,000 in liquidated damages or the remaining $98,500 in earnest money as provided in section 5.4.

## B.  UNDERLYING LITIGATION

Powdermaker filed suit against Hovnanian, raising a claim for breach of contract.  Powdermaker alleged that by amending the contract to extend the inspection period, Hovnanian necessarily notified Powdermaker under section 5.4 of its intent to continue the contract, which triggered Hovnanian's contractual obligation to pay Powdermaker under section 5.4 because the contract was terminated after the notice of intent to continue.  In short, Powdermaker believed that the amendment was Hovnanian's written notice under section 5.4 that it intended to continue the contract.  Hovnanian answered and raised several affirmative defenses, including payment, release, failure to mitigate, and waiver. Hovnanian also raised a counterclaim for its attorney's fees, which it alleged were provided for in the contract: "Should either party be required to retain an attorney to enforce its obligations hereunder, the prevailing party shall be entitled to recover from the non-prevailing party its reasonable attorneys' fees incurred in such enforcement."  Based on a jury-trial waiver in the contract, the trial court

5

conducted a bench trial on February 17 and April 13, 2015. After Powdermaker rested its case, Hovnanian moved for judgment in its favor, which was denied. *See* Tex. R. Civ. P. 268. After both Powdermaker and Hovnanian closed, Hovnanian again moved for judgment, which the trial court denied.

### C. POST-TRIAL

On July 31, 2015, the trial court signed a final judgment in favor of Powdermaker, awarding it $348,500 in damages and $67,765.50 in attorney's fees, and rendered a take-nothing judgment on Hovnanian's counterclaim. Hovnanian filed a request for findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. The trial court entered findings and conclusions, concluding that the contract was unambiguous, finding that Hovnanian "gave written notice of its intention to continue the Contract in full force and effect," and finding that it thereafter "terminated the Contract pursuant to Section 5.4." The trial court concluded that this notice and subsequent termination triggered Hovnanian's duty to pay Powdermaker the liquidated damages provided in section 5.4.

Hovnanian appeals and argues that (1) the trial court's interpretation of the amendment as a notice to continue "is unsupported by the plain language [of the contract], fails to give meaning to each provision, fails to harmonize the provisions, and leads to absurd results" and (2) the evidence was legally, or alternatively factually, insufficient to support the trial court's implicit finding that the amendment was a written notice to continue. Powdermaker responds that the amendment was a notice of intent to continue that complied with the

6

contractual notice requirements in section 14.5, rendering the trial court's interpretation of the contract legally correct, and that the evidence showed Hovnanian breached the contract by failing to pay the section 5.4 damages upon termination.

## II. STANDARDS OF REVIEW

### A. CONTRACT INTERPRETATION

In attacking the trial court's judgment, Hovnanian recites the standards of review applicable to findings and conclusions along with the standards used to determine whether sufficient evidence supported the challenged findings and conclusions. But this is a case involving the interpretation of a contract. The trial court concluded, and no party disputes on appeal, that the contract was unambiguous. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996) (holding whether a contract is unambiguous is a question of law). Accordingly, extrinsic evidence of the parties' intent or the meaning of the contract's terms may not be considered. *See Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (op. on reh'g) (holding extrinsic evidence admissible only to interpret ambiguous contract). Thus, the traditional sufficiency-of-the-evidence standards are a poor fit for Hovnanian's initial, straightforward question of contract interpretation, which is an issue of law that we determine de novo. *See, e.g.*, *Unit Petroleum Co. v. David Pond Well Serv., Inc.*, 439 S.W.3d 389, 395–96 (Tex. App.—Amarillo 2014, pet. denied) (reviewing, after bench trial involving interpretation of oil-and-gas lease, trial

7

court's interpretation of lease under standards of contract construction as a matter of law). Hovnanian recognizes this by arguing in its reply that this court may not address the evidence regarding any breach by Hovnanian without first determining the appropriate interpretation of the contract as a matter of law. Because Hovnanian's first issue attacks the legal correctness of the trial court's interpretation of the contract, we will apply the traditional rules of contract interpretation to determine, as a matter of law, whether the trial court erred in its construction of the contract. *See Kachina*, 471 S.W.3d at 449 ("At issue here is the trial court's construction of the Agreement's . . . provision[s]. The construction of an unambiguous contract is a question of law, also reviewed de novo.").

In construing an unambiguous contract, we consider the entire writing and attempt to harmonize and give effect to all of the contract's provisions such that none are rendered meaningless. *See id.* at 450; *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We are to give contractual terms their "plain and ordinary meaning" unless the contract itself shows that a different meaning was intended. *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). We presume that the parties intended for every clause to have some effect. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.

8

1996). The intent of the parties must be taken from the agreement and the unambiguous contract must be enforced as written. *See id.* All writings that relate to the same transaction must be interpreted together even if not executed at the same time. *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999); *Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850, 858 (Tex. App.—Fort Worth 2009, pet. denied).

## B. FINDINGS AND CONCLUSIONS

Hovnanian also challenges the sufficiency of the evidence to support the trial court's conclusion that Hovnanian breached the contract by failing to pay the damages provided in section 5.4 based on the trial court's finding that Hovnanian gave written notice of its intent to continue under that same section. We review conclusions of law de novo, affording them no deference. *See Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998); *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996) (op. on reh'g). A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

## III. APPLICATION

Hovnanian specifically attacks the trial court's conclusions that Hovnanian gave written notice of its intent to continue the contract before the inspection period expired, thereby triggering its duty to pay Powdermaker liquidated damages and a larger portion of its earnest-money deposit after the contract

9

subsequently terminated. In short, Hovnanian argues that the amendment may not be interpreted to equate to a notice of intent to continue the contract under section 5.4. If the amendment was a notice of intent to continue, Hovnanian was required to pay the damages under section 5.4 when the contract terminated; if it was not, Hovnanian could terminate the contract with no penalty under section 5.4.

At trial, Alan Powdermaker, the "general partner" of Powdermaker, testified through designated deposition excerpts that he considered the amendment to be Hovnanian's written notice that it intended to continue the contract. Daniel Stasky, the land acquisition manager for Hovnanian, testified that Hovnanian never provided written notice to continue the contract under sections 5.4 and 14.5, mainly because he believed Hovnanian had not complied with the contractual requirements to give such notice; therefore, the contract automatically terminated with no penalty. But as we previously stated, this extrinsic evidence regarding the contract's meaning or the parties' intent is not admissible to inform the contract's interpretation. Therefore, we turn to the language of the unambiguous contract.

Considering the unambiguous language of the contract, together with the amendment, there were separate and distinct provisions that furnished Hovnanian with options to (1) unilaterally continue the contract, (2) unilaterally extend the inspection period, or (3) amend the contract by agreement. In section 5.4, the contract provided for "written notice of [Hovnanian's] intention to

continue" the contract. This provision does not require any approval, acknowledgment, or signature by Powdermaker. Such written notice, if delivered before the inspection period ended, would entitle Powdermaker to liquidated damages upon subsequent termination of the contract. But if no written notice was given, the contract would automatically terminate at the end of the inspection period. Section 5.4 also provided that Hovnanian could extend the inspection period by sending written notice to Powdermaker and the title company. Once again, this action by Hovnanian required no approval by or signature of Powdermaker but did provide that to avail itself of this option, Hovnanian would have to pay for each extension by the release of a specified amount of the earnest money on deposit.[4] Finally, section 14.16 of the contract clearly allowed for an amendment to the contract with the explicit requirement that an amendment or modification be "signed or acknowledged in writing by both parties."

We cannot agree with the trial court's interpretation of the provisions at issue. At the time the contract was executed, amendment of the contract was specifically contemplated in section 14.16, which clearly stated how an amendment was to be properly performed. The amendment strictly adhered to the requirements of only one of the options set out above—an amendment or

---

[4]The record does not reflect that the amendment was sent to the title company to initiate the required release of funds on deposit nor does either party contend that this occurred.

11

modification of the contract. The amendment was so entitled, specifically stated it was an "amendment and modification," and was executed by both Powdermaker and Hovnanian. The amendment's language could not be clearer that it does nothing more than amend the contract to modify the definition of the term "Inspection Period." We conclude as a matter of law that the unambiguous contract's plain language contradicts the trial court's interpretation, equating the amendment to a notice of intent to continue the contract under section 5.4. Therefore, we sustain Hovnanian's first issue.

Hovnanian's second issue, which is dependent on the contract's correct interpretation, now is easily decided. Because the amendment was not a notice of intent to continue the contract under the unambiguous contract's plain language, there was no notice of intent to continue such that Hovnanian breached the contract by failing to pay Powdermaker the section 5.4 damages once the contract terminated at the end of the amended inspection period. We sustain issue two.

## IV. CONCLUSION

Because the trial court erred by interpreting the contract contrary to its unambiguous language, its conclusion that Hovnanian breached the contract is unsupported by any evidence in the record. We sustain Hovnanian's issues, reverse the trial court's judgment, and remand to that court for further proceedings on Hovnanian's counterclaim for attorney's fees. *See* Tex. R. App. P. 43.2(d), 43.3(a). Further, our judgment and mandate shall reflect that

Hovnanian's surety is discharged from its liability on the supersedeas bond filed in the trial court on September 1, 2015. *See Amwest Sur. Ins. Co. v. Graham*, 949 S.W.2d 724, 729 (Tex. App.—San Antonio 1997, writ denied); *Edlund v. Bounds*, 842 S.W.2d 719, 732 (Tex. App.—Dallas 1992, writ denied).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: GARDNER, GABRIEL, and SUDDERTH, JJ.

DELIVERED: June 9, 2016

13