**AFFIRM; and Opinion Filed January 13, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01311-CV

### CRISP ANALYTICAL LAB, L.L.C., Appellant
### V.
### JAKALAM PROPERTIES, LTD., Appellee

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-8554-D**

## OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice O'Neill

A jury found appellant Crisp Analytical Lab, L.L.C. ("Crisp") liable for breach of an oral agreement and awarded appellee Jakalam Properties, Ltd. ("Jakalam") $513 in damages. On appeal, Crisp argues (1) the trial court erred by entering judgment against it because, as a matter of law, an enforceable contract did not exist between the parties; (2) if an agreement existed, the evidence established Crisp did not breach it; and finally, (3) the trial court erred by entering an award of attorney's fees based on the breach of the alleged contract. We affirm the trial court's judgment.

### Background

Jakalam buys warehouses, renovates them, and then leases them to tenants. In 2009, Jakalam bought a building, referred to as the Boyington Property. It was built in 1984. Like its other properties, Jakalam planned to renovate and lease it to tenants.

Jakalam hired Bullard Construction as the main contractor of the Boyington Property renovation. Jakalam also hired Pinnacle Environmental ("Pinnacle") to gather samples from the Boyington Property for asbestos testing. The samples were then given to Crisp for testing. The original report from Crisp indicated the presence of asbestos in the building. Crisp gave the report to Pinnacle, who in turn provided the report to Jakalam.

Once Jakalam learned of the presence of asbestos, it shut down the Boyington project for proper abatement procedures. Jakalam contacted Bullard Construction and Bullard providing notice to all its subcontractors to stop work. Jakalam also contacted its attorney at Carrington, Coleman, Sloman & Blumenthal, L.L.P. to determine the legal requirements in such situations.

Jakalam's attorney advised it to hire a firm to oversee the asbestos removal. Jakalam hired ATC, an asbestos abatement consultant service, to perform its own independent testing and removal of any asbestos. After ATC retested the property, it told Jakalam the property did not contain asbestos. ATC advised Jakalam to contact Crisp and ask that "specific point counts on specific samples" from the Boyington Property be tested. Crisp agreed to conduct the point counting.

Upon further testing, it was discovered that Crisp made a mistake in its initial testing of samples from the Boyington Property, and the building did not contain asbestos. Crisp immediately contacted Pinnacle and informed it of the error. The error resulted in the Boyington project being on hold for four weeks.

Crisp has never denied that it made a mistake in the testing of the building; however, it disputes the conversations and alleged agreement between it and Jakalam to correct the error. Jakalam's position is that the parties entered into an enforceable oral contract because Crisp agreed to make Jakalam "whole."

Mike Cohen, the principle owner of Jakalam, testified at trial that he told Lee Crisp he estimated the damages caused by the mistake to be between $12,000 and $20,000. Cohen admitted no specific dollar amount was agreed upon because at the time, he was unsure of the exact damages caused by the delay. Cohen further testified that he understood Crisp's agreement to make Jakalam "whole" to mean Crisp would reimburse for expenses incurred because of the mistake, even if Crisp disagreed or questioned the claims.

Lee Crisp testified Cohen told him the estimated damages would be between $10,000 and $12,000. Crisp further claimed he told Cohen he would look at any submitted reimbursement requests and pay what was legitimate and reasonable. He did not recall agreeing to make Jakalam "whole" and claimed ignorance to what that meant. The parties did not discuss a method or make an agreement as to what would happen if a dispute regarding the reasonableness of a request arose. Crisp testified he never intended to enter into a contract with Jakalam. He was merely trying to make it right "within reason."

Based on Cohen's understanding of the agreement, he submitted Jakalam's first reimbursement request for $6,329.65 to Crisp. The invoice stated, "Not all expenses have been yet accounted for and given to Crisp Analytical for reimbursement." Cohen noted on the fax cover sheet, "I will send you the other expenses as soon as I get them." Crisp immediately sent a check for the requested amount, without any complaints. Cohen testified Crisp's immediate payment fit within his understanding of the agreement.

Cohen later called Crisp regarding a second invoice. He told Crisp it "should be" the final invoice, told him the amount, and told him what the expenses covered. Cohen followed up by sending a written request for the discussed amount of $9,977.79.

In response to the second reimbursement request, Crisp called Cohen because he wanted an explanation for the Bullard Construction charges. Later, Crisp sent a check for $3,500 with a

"**Release Form**" letter explaining its position. The letter stated that the $3,500 covered the Bullard Construction estimate, but Crisp would not pay for Jakalam's expenses to ATC, which covered the second asbestos survey because "[Jakalam] will have to pay some asbestos survey-it is required by law." Crisp contended that Jakalam had already hired Pinnacle as its environmental consultant and paid $2,200 for its work, which Pinnacle later paid back to Jakalam. Crisp argued there was no reason for Jakalam to later hire ATC and spend another $2,700 because ATC and Pinnacle performed the same work.

Jakalam contended Pinnacle and ATC were hired to do different jobs, despite both being environmental consultants. Jakalam hired Pinnacle to conduct the general environmental survey when the Boyington project began, whereas Jakalam hired ATC to execute procedures to remove the asbestos only after asbestos was mistakenly identified on the property.

Jakalam never cashed the second check because it did not want to release Crisp from its obligation to pay the full amount. When Cohen tried to discuss the difference in the amounts, Crisp refused and directed Cohen to talk to his lawyer.

Jakalam filed suit against Crisp, and the case was tried before a jury. Jakalam asked the jury to find that the parties entered into an enforceable contract, which Crisp breached, and award $9,478.44 in damages. The jury agreed with Jakalam, but awarded $513 in damages. This amount appears to represent the extra money Jakalam paid ATC over the amount it had originally paid Pinnacle.

Crisp appeals the jury's determination that it breached an enforceable agreement. It also challenges whether Jakalam prevailed on its contract claim and was entitled to $49,500 in attorney's fees.

**Did the Parties Enter Into an Enforceable Contract?**

In its first issue Crisp argues the trial court erred by entering judgment in favor of Jakalam on its breach of contract claim because the evidence established, as a matter of law, that an enforceable oral contract did not exist because the parties did not sufficiently define the essential terms of the alleged agreement. Jakalam responds that while the parties did not establish specific contractual terms, the terms were sufficiently definite to enable a court to fix the parties' obligations and liabilities; therefore, the "lenient test for enforceability" is easily satisfied. Furthermore, Jakalam responds Crisp's initial payment of the first reimbursement request, without objection, shows partial performance of an enforceable agreement between the parties.

Whether a particular agreement is an enforceable contract is a question of law reviewed de novo. *Fiduciary Fin. Servs. of Sw. Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied). To be enforceable, a contract must define its essential terms with sufficient detail to allow a court to determine the obligations of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 310 (Tex. App.—Dallas 2013, pet. filed). "Essential terms" of a contract may include time of performance, price to be paid, work to be done, service to be rendered, or property to be transferred. *Learners Online, Inc. v. Dallas Indep. Sch. Dist.*, 333 S.W.3d 636, 643 (Tex. App.—Dallas 2009, no pet.). When an agreement leaves essential terms open for future negotiation, it is not binding upon the parties and merely constitutes an agreement to agree. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 847 (Tex. 2000). However, parties may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation. *Corilant Fin., L.P.*, 376 S.W.3d at 256. The parties must have a "meeting of the minds" and must communicate consent to the terms of

the agreement. *Sadeghi v. Gang*, 270 S.W.3d 773, 776 (Tex. App.—Dallas 2008, no pet.). The determination of a meeting of the minds is based on an objective standard of what the parties said and did rather than their subjective state of mind. *Id.*

Here, Crisp focuses on the fact that it agreed to make Jakalam "whole"; however, it asserts this term is too indefinite to create an enforceable oral contract. Moreover, it asserts the parties failed to agree on "the single-most essential term . . . the amount that was supposed to be paid by Crisp."

We, however, agree with Jakalam that the agreement was not merely a vague and open-ended commitment to make Jakalam whole, but rather Crisp agreed to reimburse Jakalam for the costs and expenses resulting from the erroneous asbestos report. The record shows Crisp expressed remorse over the mistake and wanted to do what was right. Lee Crisp testified, "There are people that are still ethical that would like to take care of their mistakes. We are those people." Thus, the record shows Crisp admitted his error, admitted he wanted to fix the mistake, and that the parties discussed a range of the likely expenses. At no time did Crisp object to repaying Jakalam for its expenses. While Crisp disagreed with the range testified to by Cohen, he did not deny that a range was discussed–only that he recalled the range differently. Cohen testified expenses would likely be between $12,000 to $20,000, and Crisp recalled $10,000 to $12,000.

While the amount to be paid may be an essential term of a contract, "the failure to specify a price does not necessarily render the contract so indefinite as to be unenforceable." *See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 895 (Tex. App.—Dallas 2003, no pet.). Here, Cohen testified he could not provide Crisp with an exact amount of his expenses at the time Crisp agreed to make Jakalam whole because Cohen was unsure of the out-of-pocket expenses. Again, Crisp did not make any objections to Cohen's

inability to provide an exact dollar amount. Although Crisp argues in its brief other essential elements were missing from the contract, such as how to determine the reasonableness of expenses or how the parties would settle a disagreement regarding the reasonableness of expenses, it cites no authority holding such terms are essential to the enforcement of a contract. *Cf. Lerer v. Lerer*, 05-02-00124-CV, 2002 WL 31656109, at \*2 (Tex. App.—Dallas Nov. 26, 2002, pet. denied) (not designated for publication) (concluding omitted terms from a settlement agreement did not render it unenforceable because the terms were not "essential"). Thus, we are not persuaded the enforceability of the alleged contract hinges on the inclusion of these terms.

Based on the evidence and applicable law, we conclude "the contract was about as definite and certain as the parties could have made it under the circumstances and it was sufficiently definite and certain to furnish a basis for arriving with reasonable certainty at the minimum damages." *See Pace Corp. v. Jackson*, 284 S.W.2d 340, 347 (Tex. 1955). In reaching this conclusion, we reject the case law relied on by Crisp because the agreements involved in those cases are entirely different types of agreements from the one here.

For instance, Crisp cites *Pine v. Gibraltar Savings Association*, 519 S.W.2d 238 (Tex. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) and *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992); however, these cases involved agreements to loan money. This Court has previously concluded that agreements to loan money require essential elements that are different than, for example, a contract to provide services. *See Ameristar Jet Charter, Inc. v. Cope*, No. 05-99-01875-CV, 2001 WL 950978, at \*4 (Tex. App.—Dallas Aug. 22, 2001, no pet.) (not designated for publication) (concluding *T.O. Stanley Boot* was not controlling in determining the enforceability of an oral contract because it involved a contract to loan money, while Ameristar's contract was more akin to a contract to provide services). The agreement at

issue here is more akin to one providing services than one loaning money; therefore, we do not find these cases controlling.

Crisp also cites *Chavez v. McNeely*, 287 S.W.3d 840 (Tex. App.—Houston [1st Dist.] 2009, no pet.) in which the court determined a divorce clause requiring the wife to pay "as much as possible" toward her husband's "needs," limited only by her "personal financial situation," was too indefinite to be enforced. However, in reaching its conclusion, the court noted "there is simply no guidance" as to how much the wife was required to pay each month to her husband for his "needs." The agreement here specified what Crisp was required to do–reimburse Jakalam– and defined what Crisp was required to reimburse–the cost and expenses Jakalam incurred from Crisp's erroneous asbestos report.

Our conclusion that the parties entered into an agreement is further strengthened by Crisp's actions upon receiving Jakalam's first reimbursement request. "Part performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed." RESTATEMENT (SECOND) OF CONTRACTS § 34(2) (1981). Here, Crisp immediately paid the requested $6,329.65 without any objection to the reasonableness of the amount and without any questioning of the agreement between the parties. Moreover, the fax cover sheet Jakalam sent with the request stated, "I will send you the other expenses as soon as I get them." Again, Crisp did not object to Jakalam's statement that more reimbursement requests would be forthcoming. Thus, by sending the initial payment in response to the reimbursement request, Crisp acknowledged an agreement and "meeting of the minds" between the two parties. *See Sadeghi*, 270 S.W.3d at 776 (determination of a meeting of the minds is based on an objective standard of what the parties said and did rather than their subjective state of mind).

Accordingly, we conclude the evidence establishes, as a matter of law, that the parties entered into an enforceable oral contract. Therefore, the trial court did not err by entering

–8–

judgment, in accordance with the jury's verdict, in favor of Jakalam. We overrule Crisp's first issue.

## Did Crisp Breach the Oral Agreement?

In its second issue, Crisp argues the evidence is legally insufficient to support the jury's finding that it failed to comply with the agreement to reimburse Jakalam for the costs and expenses incurred as a result of the erroneous asbestos report. Specifically, Crisp asserts (1) it was impossible for the parties to know the amount owed until the jury determined the award, and (2) by tendering $3,500 to Jakalam, it did not breach the contract, even though this amount did not cover the full amount Jakalam requested. Crisp claims because the tendered amount was seven times the damages amount found by the jury, Crisp did not fail to perform its obligation under the agreement to make Jakalam whole.

First, Crisp's argument that any alleged agreement could not be enforced because of indefiniteness as to an essential term was overruled in issue one. We need not address it again. To address Crisp's second argument, although not specifically discussed by either party in this issue,[1] we find it necessary to determine whether Crisp properly tendered the $3,500 check.

"Tender" is an unconditional offer by a debtor to pay a sum of money not less than the amount due on the obligation. *Baucum v. Great Am. Ins. Co. of N.Y.*, 370 S.W.2d 863, 86 (Tex. 1963); *Collision Ctr. Paint & Body, Inc. v. Campbell*, 773 S.W.2d 354, 357 (Tex. App.—Dallas 1989, no writ). As a general rule, a tender of payment must include everything to which the creditor is entitled; any less sum is ineffectual. *Campbell*, 773 S.W.2d at 357. Further, the very definition of "tender" does not allow for the possibility of conditional offers. *Wilson v. Klein*, 715 S.W.2d 814, 821 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *see also Optimum Fund, L.L.C. v. Cito Int'l, Inc.*, No. 05-00-01240-CV, 2001 WL 1427629, at *4 (Tex. App.—Dallas

---

[1] The parties discuss tender as it relates to attorney's fees in issue three.

Nov. 15, 2001, pet. denied) (not designated for publication) (concluding a tender was conditional and qualified when it was given to preserve a right to redeem certain property in the event of a successful appeal).

Despite Crisp's contention that it "tendered" payment above and beyond the amount found by the jury, we cannot agree. The record shows Crisp sent a letter, along with the check, titled "**Release Form**." Crisp explained why the amount was less than the requested $9,977.79 and said, "At this point, we believe you have been fairly reimbursed for any costs associated with [t]his situation and should now speak with our attorney . . . should you have any more questions." Because Crisp sent an amount less than that requested by Jakalam, it was not an effective tender. But more importantly, Crisp sent a conditional offer in the form of a release. As previously stated, the very definition of "tender" does not allow for the possibility of conditional offers. *Wilson*, 715 S.W.2d at 821; *Optimum Fund, L.L.C.*, 2001 WL 1427629, at *4; *cf. Cactus Canyon Quarries of Tex. v. Williams*, No. 03-98-00023-CV, 1999 WL 372507, at *2 (Tex. App.—Austin June 10, 1999, no writ) (concluding a letter was a proper tender when it contained no conditions, made no mention of a release, and included a check in the full amount of the judgment owing). Therefore, Crisp's argument that it "tendered" an amount in excess of the damages awarded by the jury and could therefore not be found to have breached the contract is without merit. We overrule Crisp's second issue.

**Award of Attorney's Fees**

In its final issue, Crisp argues the trial court erred by awarding attorney's fees in favor of Jakalam because the evidence establishes as a matter of law (1) no enforceable contract existed between the parties; (2) Crisp timely tendered to Jakalam the just amount due on the claim; and (3) Jakalam did not prevail on its contract claim to recover attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code.

–10–

Section 38.001(8) allows a party to recover reasonable attorney's fees in cases involving oral contracts. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). To recover under this section, a party must prevail on its contract cause of action and recover damages. *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 152 (Tex. App.—Dallas 2012, no pet.).

As to Crisp's first two arguments against the award of attorney's fees, we have discussed and overruled them both above. Therefore, we shall focus on Crisp's third argument—whether Jakalam was a prevailing party.

Crisp argues "[g]iven the fact that the amount recovered by Jakalam was five percent of the amount sought by it and, additionally, given that Crisp timely tendered payment of $3,500.00, an amount roughly seven times greater than the amount awarded by the jury, Jakalam cannot be considered the prevailing party in this case." Again, Crisp cannot rely on any argument that it tendered payment to Crisp. Moreover, we are unpersuaded by Crisp's argument that Jakalam is not a prevailing party because the jury only awarded $513 in damages.

Crisp relies on *Blizzard v. Nationwide Mutual Fire Insurance Co.*, 756 S.W.2d 801 (Tex. App.—Dallas 1988, no writ) to support its position; however, Crisp's reliance is misplaced. In that case, this court determined the plaintiff could not recover attorney's fees as a prevailing party because although the plaintiff was successful on her claim at trial, the insurance company had paid her in full prior to trial the amount of damages awarded by the jury. We noted, "Blizzard was not awarded any recovery on her claim, not because Nationwide was entitled to an offset, but because Nationwide had already paid Blizzard all the damages she was able to prove." *Id.* at 806. Despite Crisp's argument to the contrary, it did not timely tender payment to Jakalam; therefore, unlike *Blizzard*, Jakalam had not recovered its full amount of damages from Crisp prior to trial.

–11–

Rather, we conclude *Mira Mar Development Corp. v. City of Coppell*, __ S.W.3d__, No.05-10-00283-CV, 2013 WL 5524860, at *24 (Tex. App.—Dallas Oct. 7, 2013, no pet.) (op. nunc pro tunc) is persuasive to the prevailing party issue. In that case, a trial court vacated an award of attorney's fees because "appellant could not be considered a 'prevailing party' when it had recovered only about $40,000 while seeking over $800,000 in damages." *Id*. We reversed and held that to the extent appellant recovered $40,000, it was in fact a prevailing party and entitled to recover attorney's fees. *Id*. It did not matter to the analysis the difference in the amount awarded verses the amount sought. *See, e.g., MBM Fin. Corp. v. The Woodlands Operating Co*., 292 S.W.3d 660, 666 (Tex. 2009) (noting that to recover as a prevailing party on a breach of contract claim a party must recover "some amount" on the claim).

Thus, because the jury awarded Jakalam some damages on its breach of contract claim, Jakalam was a prevailing party under section 38.001(8) and entitled to $49,500 in attorney's fees. We note Crisp has not challenged the reasonableness of the $49,500 award. Accordingly, the trial court did not err in entering judgment on the attorney's fees, and we overrule Crisp's final issue.

## Conclusion

The judgment of the trial court is affirmed.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

121311F.P05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CRISP ANALYTICAL LAB, L.L.C.,
Appellant

No. 05-12-01311-CV      V.

JAKALAM PROPERTIES, LTD., Appellee

On Appeal from the 95th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-8554-D.
Opinion delivered by Justice O'Neill.
Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JAKALAM PROPERTIES, LTD. recover its costs of this appeal from appellant CRISP ANALYTICAL LAB, L.L.C.

Judgment entered this 13th day of January, 2014.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE