# NO. 12-15-00304-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GEORGE GREGORY,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CONNECTICUT SHOTGUN*<br>*MANUFACTURING COMPANY,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

George Gregory appeals from a judgment rendered against him and in favor of Connecticut Shotgun Manufacturing Company, Inc. (CSM). He presents four issues on appeal. We affirm.

### BACKGROUND

Gregory is a competitive shotgun shooter. When the top and bottom ribs of his Winchester Model 21 became loose, he sent it to CSM for repairs. While CSM was working on the Model 21, Gregory contacted Lou Frutuoso, one of CSM's salesmen, about purchasing a set of Grand American shotguns—a 12-gauge and a 28-gauge—that he wanted to match the specifications of his Model 21. In February 2012, Gregory received an "order conformation" and "terms and conditions" for each gun (the agreement). Each "order conformation" stated an anticipated ship date of September 2012, and listed the configuration for each gun. Gregory reviewed the documents and made revisions, including writing "same as the 21 that you are working on" next to the specifications for the 12-gauge.

Gregory did not receive the guns until January 2013. According to Gregory, the guns were beautiful, but were not the correct weight or dimensions and were not engraved. Gregory also claims the guns did not fit correctly, were painful to shoot, and did not aim correctly.

Gregory sued CSM for breach of contract, fraud, breach of warranty, and violations of the Deceptive Trade Practices Act (DTPA). At trial, CSM moved for a directed verdict. The trial court granted the directed verdict on Gregory's fraud, breach of warranty, and DTPA causes of action. The jury found that CSM did not breach the contract. This appeal followed.

**EXCLUSION OF EVIDENCE**

In his first and fourth issues, Gregory challenges the trial court's exclusion of alleged misrepresentations and a previous transaction made by CSM.

## Standard of Review

The decision to admit or exclude evidence lies within the trial court's sound discretion. ***Bay Area Healthcare Grp., Ltd. v. McShane***, 239 S.W.3d 231, 234 (Tex. 2007). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *See **Bowie Mem'l Hosp. v. Wright***, 79 S.W.3d 48, 52 (Tex. 2002). An appellate court must sustain the trial court's ruling if there is any legitimate basis for the ruling. ***Owens–Corning Fiberglas Corp. v. Malone***, 972 S.W.2d 35, 43 (Tex. 1998).

To obtain reversal of a judgment based on the trial court's error in excluding or admitting evidence, the complaining party must show that the error probably resulted in an improper judgment. ***Interstate Northborough P'ship v. State***, 66 S.W.3d 213, 220 (Tex. 2001); TEX. R. APP. P. 44.1(a)(1). An appellate court must review the entire record to determine whether the excluded evidence resulted in the rendition of an improper judgment. ***Interstate Northborough P'ship***, 66 S.W.3d at 220. The trial court's error in the exclusion of evidence generally will not be reversible unless the excluded proof is "controlling on a material issue." ***Gee v. Liberty Mut. Fire Ins. Co.***, 765 S.W.2d 394, 396 (Tex. 1989).

## Governing Law

"All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

2

issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

Evidence of other wrongs or acts is not admissible to prove character in order to show action in conformity therewith. TEX. R. EVID. 404. But it is admissible to show a party's intent, if material, provided the prior acts are so connected with the transaction at issue that they may all be parts of a system, scheme or plan. *Serv. Corp. Intern. v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011); *see* TEX. R. EVID. 404. This can be shown through evidence of similar acts temporally relevant and of the same substantive basis. *Guerra*, 348 S.W.3d at 235.

The parol evidence rule is not, strictly speaking, a rule of evidence. *See Hubacek v. Ennis State Bank,* 317 S.W.2d 30, 31 (Tex. 1958). It is a substantive rule of law which precludes the enforcement of inconsistent prior or contemporaneous agreements upon the execution of a valid integrated agreement with respect to a particular matter. *Carr v. Weiss,* 984 S.W.2d 753, 765 (Tex. App.—Amarillo 1999, pet. denied). Only after a contract is found to be ambiguous may parol evidence be considered for determining the true intent of the parties. *Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 283 (Tex.1996). Under the Texas Uniform Commercial Code (U.C.C.), parol evidence may not be offered to contradict a written provision of a contract but parol evidence of "consistent additional terms" is allowed unless the writing was intended as a complete and exclusive statement of the terms of the agreement. TEX. BUS. & COM. CODE ANN. § 2.202 (West 2009).

## Parol Evidence

In his first issue, Gregory contends the trial court erred by excluding parol evidence of promises and misrepresentations that CSM made to induce him into purchasing the guns. Specifically, Gregory sought to introduce evidence that: (1) the dimensions of the guns would match his Model 21; (2) the guns would be delivered in September 2012; and (3) he was entitled to a full refund if dissatisfied with the guns. The trial court excluded this evidence on grounds that it violated the parol evidence rule. On appeal, Gregory contends that the excluded evidence does not violate the parol evidence rule because (1) there was no fully integrated agreement, as the written documents did not contain a warranty or a refund provision and were not intended to be a complete expression of terms, (2) the anticipated ship date is consistent with Frutuoso's representation regarding September delivery, (3) the written documents do not preclude a refund, and (4) the dimensions identified in the documents were taken from the Model 21. He further

argues that the evidence was admissible for purposes of fraud and DTPA violations, and is not barred by the parol evidence rule.

We first note that the parties' agreement consisted of the "order conformation" and "terms and conditions" for each gun. These documents contained all of the essential terms of the agreement between the parties, i.e., the specifications for the guns, anticipated shipping date, purchase price, and other details. *See Crisp Analytical Lab, L.L.C. v. Jakalam Properties, Ltd.*, 422 S.W.3d 85, 89 (Tex. App.—Dallas 2014, no pet.) (stating essential terms of contract include time of performance, price, work to be done, services to be rendered, or property to be transferred). Therefore, the agreement does not appear on its face to be ambiguous or incomplete, and parol evidence was not admissible for purposes of removing any ambiguity or making the contract complete. *See Friendswood Dev. Co.,* 926 S.W.2d at 283; *see also Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, 195 S.W. 184, 185 (Tex. 1917) (stating that one exception to parol evidence rule is that "if the written instrument itself shows to be either ambiguous or incomplete, parol testimony is admissible to show what the real contract was to the extent necessary to remove the ambiguity, and to make the contract complete in its terms which show to be incomplete[]").

Moreover, parol evidence cannot be used to vary or contradict the agreement's terms. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008). The "order conformation" for each gun states that the *anticipated* shipping date is September 2012, and the "Ship Date" is left blank. Accordingly, evidence that CSM *guaranteed* a September ship date is inconsistent with the express terms of the agreement. Each "order conformation" also lists the specifications for the particular gun. Although Gregory made a notation on the "order conformation" that the 12-gauge should be of the same dimensions as the Model 21, he did not make the same notation for the 28-gauge. Additionally, the "terms and conditions" for each gun expressly stated, "I agree with the configuration of the CSMC 21 shotgun to be built for me specifically identified in Order Number 806 [and 807]." Evidence that the guns were to have the same dimensions as Gregory's Model 21, as opposed to the specifications listed on each "order conformation," contradicts the agreement's express terms. Because this evidence would vary or contradict the parties' written agreement, it was not admissible as an exception to the parol evidence rule. *See id*.; *see also Johnson v. Driver*, 198 S.W.3d 359, 364 (Tex. App.—Tyler 2006, no pet.) (stating evidence that

4

violates parol evidence rule is incompetent, is without probative force, and cannot properly be given legal effect).

Regarding the excluded evidence of Gregory's entitlement to a refund, Gregory contends that Frutuoso, as well as CSM's catalog and website, stated that he could return the guns for a full refund if he was dissatisfied. He argues that this evidence is consistent with the agreement because the "terms and conditions" stated that his *deposit* would not be refunded once construction of the guns began. During his offer of proof, Gregory testified that he saw CSM's catalog and website, and he believed he was entitled to a refund if dissatisfied with the guns. However, the catalog that Gregory attempted to introduce at trial was CSM's 2013 catalog; thus, the agreement predates this catalog. Moreover, the evidence showed that Gregory did not make a deposit on the guns, but paid the full purchase price in advance. He could not say with certainty when he saw any guarantee from CSM, and he admitted that the agreement said nothing about a refund guarantee. The "terms and conditions" for each gun also contains the following clause: "If the information in this letter is consistent with your order and our understanding, please sign this letter and return it to us." Gregory signed the letters, and the record does not indicate that any changes were made with regard to a refund guarantee. Evidence to the contrary would be inconsistent with the agreement, and was not admissible. *See **Haden***, 266 S.W.3d at 451; *see also **Johnson***, 198 S.W.3d at 364.

Gregory further argues that the oral representations are admissible because the parol evidence rule does not apply to fraud and DTPA claims. However, each of the oral representations alleged by Gregory expressly conflict with the terms of the agreement. Reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law. ***DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.***, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Thus, while a plaintiff may be able to introduce parol evidence of a defendant's misrepresentations in order to prove a claim of fraudulent inducement, where that parol evidence is directly contradicted by the express terms of the written agreement the plaintiff will fail to prove the element of justifiable reliance. *See **Schlumberger Tech. Corp. v. Swanson***, 959 S.W.2d 171, 179 (Tex. 1997) ("fraud must be something more than merely oral representations that conflict with the terms of the written contract") (citing ***Distribs. Inv. Co. v. Patton***, 110 S.W.2d 47, 48 (Tex. 1937)). And, as explained below, Gregory's alleged DTPA

claims amount to no more than a breach of contract claim. *See **Crawford v. Ace Sign, Inc.***, 917 S.W.2d 12, 14 (Tex. 1996). As a result, even if the evidence was admissible, Gregory has not shown that its exclusion probably caused the rendition of an improper judgment. *See **Interstate Northborough P'ship***, 66 S.W.3d at 220 (Tex.2001); TEX. R. APP. P. 44.1(a)(1).

For these reasons, the trial court did not err by excluding the proffered evidence under the parol evidence rule. *See **McShane***, 239 S.W.3d at 234; *see also **Wright***, 79 S.W.3d at 52. We overrule Gregory's first issue.

## The Extraneous Transaction

In his fourth issue, Gregory alleges that the trial court should have admitted evidence of one of CSM's prior transactions because it shows CSM was engaged in a pattern of deceit.

Specifically, Gregory sought to introduce evidence of a transaction between CSM and another customer, Elam Swann, in which CSM allegedly misrepresented the quality of a used Model 21. Gregory introduced the evidence via an offer of proof, during which Swann testified that he purchased a used Model 21 from CSM in March 2008. He testified that CSM advertised the gun as "new in the box" and that Frutuoso told him that the gun appeared to be unused. Swann stated that he relied on these representations and purchased the Model 21. He further stated that he only used the gun once per year to hunt. In 2012, he took the Model 21 to a gunsmith for some work on the stock and was told that the gun had been highly used, showed extensive wear, and was unsafe to fire. The evidence also showed that the Model 21 had been damaged in a fire and was repaired before Swann purchased the gun. Swann eventually returned the gun to CSM. The trial court declined to admit evidence of this transaction.

On appeal, Gregory contends the excluded evidence shows that CSM was involved in a pattern of deceiving its customers. We disagree. While Gregory's and Swann's transactions both involved Frutuoso and the purchase of firearms, the similarities end there. Unlike Gregory, Swann purchased a used firearm, not a custom gun. Furthermore, the evidence is of a single transaction that occurred four years prior to Gregory's purchase. Accordingly, Swann's transaction is not temporally relevant or of the same substantive basis. *See **Guerra***, 348 S.W.3d at 236 (determining events more than one year apart not part of system, plan, or scheme). Thus, the trial court did not abuse its discretion by excluding evidence of the extraneous transaction. *See **McShane***, 239 S.W.3d at 234; *see also **Wright***, 79 S.W.3d at 52. We overrule Gregory's fourth issue.

6

In his second issue, Gregory contends the trial court erred when it granted CSM's motion for directed verdict on his fraud, DTPA, and breach of warranty causes of action.

## Standard of Review

In reviewing the grant of a directed verdict, an appellate court follows the standards for assessing the legal sufficiency of the evidence. *City of Keller v. Wilson,* 168 S.W.3d 802, 809–28 (Tex. 2005); *see also* *Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A,"* 192 S.W.3d 120, 126 (Tex. App.—Houston [14th Dist.] 2006, no pet.). An appellate court must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 827; *see also* *Cotten v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687, 696 (Tex. App.—Fort Worth 2006, pet. denied). An appellate court must determine whether there is any evidence of probative force to raise a fact issue on the question presented. *See, e.g.,* *Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 684 (Tex. 2004); *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex. 1994); *Sibai v. Wal–Mart Stores, Inc.,* 986 S.W.2d 702, 705 (Tex. App.—Dallas 1999, no pet.); *Edlund v. Bounds,* 842 S.W.2d 719, 723 (Tex. App.—Dallas 1992, writ denied).

A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to a judgment. *See Edlund,* 842 S.W.2d at 724. A trial court may order a directed verdict in favor of a defendant when (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or (2) the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000). A trial court may properly direct a verdict if no evidence of probative force raises a fact issue on the material questions in the lawsuit. *See id.*; *Sibai,* 986 S.W.2d at 705. Moreover, the reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided the directed verdict can be supported on another basis. *See Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied).

It is error for a trial court to direct a verdict when a material issue is raised by the evidence. *See Edlund,* 842 S.W.2d at 724. If there is any conflicting evidence of probative value on any theory of recovery, a directed verdict is improper and the case must be remanded for the jury to determine that issue. *See Szczepanik,* 883 S.W.2d at 649; *Sibai,* 986 S.W.2d at 705;

*Monroe v. Grider*, 884 S.W.2d 811, 815–16 (Tex. App.—Dallas 1994, writ denied). If reasonable minds could differ as to the controlling facts, a trial court errs if it grants a directed verdict and refuses to submit the issues to the jury. *See Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex. 1998); *Edlund*, 842 S.W.2d at 724.

<u>**Governing Law**</u>

To prove a cause of action for fraud, a party must show: (1) a material representation was made; (2) the representation was false; (3) the speaker knew the representation was false when made or, alternatively, made the statement recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation intending that the other party act on it; (5) the party acted in reliance upon the representation; and (6) the party was injured. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998). The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received. *Id.*

The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (West 2011); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980). The DTPA defines a "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4) (West 2011). A consumer must, in order to prevail on a DTPA claim, also establish that the defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury. *Id*. § 17.50(a); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). A breach of warranty under the U.C.C. can be brought under the DTPA. The DTPA itself does not create any warranties; it only prohibits the breach of express or implied warranties that are recognized by statute or the common law. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995).

<u>**Analysis**</u>

CSM moved for a directed verdict on Gregory's DTPA, breach of warranty, and fraud claims on grounds that those claims, if true, amounted to no more than a breach of contract. Regarding Gregory's claims for DTPA violations and breaches of express and implied

warranties, he argues that CSM misrepresented and warranted that the guns would be and could be made to the same dimensions and quality as his Model 21, it would deliver the guns by September 2012, and it would refund the purchase price if Gregory was unsatisfied. He also contends that CSM took advantage of his lack of knowledge regarding technical terms and measurements.

Mere nonfeasance under a contract creates liability only for breach of contract. *Crawford*, 917 S.W.2d at 13. If the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. *Id.* (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). "An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Id.* at 14 (citing *Ashford Dev., Inc. v. USLife Real Estate Servs.*, 661 S.W.2d 933, 935 (Tex. 1983)). The same analysis applies to claims for breach of warranty. *See Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 234 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

In this case, CSM's statements regarding the delivery date and dimensions that were presented to the jury are nothing more than representations that CSM would fulfill its contractual duty to manufacture and deliver the guns. The supposed failure to fulfill that duty is the cause of Gregory's alleged injury, and any breach of that duty sounds only in contract law. *See Crawford*, 917 S.W.2d at 13-15; *see also Humble Nat'l Bank*, 933 S.W.2d at 234. Further, to the extent that Gregory alleges he was promised a refund, the fact that CSM did not refund the purchase price is also dependent on whether CSM breached the contract. Therefore, the trial court properly granted a directed verdict on Gregory's DTPA and breach of warranty claims. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *see also Sibai*, 986 S.W.2d at 705; *Edlund*, 842 S.W.2d at 724.

As for his fraud claim, Gregory argues that (1) CSM fraudulently induced him into the purchase by promising that the guns would match the Model 21 and be delivered in September 2012; and (2) Frutuoso promised a full refund if Gregory was dissatisfied with the quality of the guns. According to Gregory, he planned to return the guns unopened until Frutuoso urged him to examine the guns and stated that he would be fully refunded if dissatisfied.

Assuming, without deciding, that these representations meet the first five elements of fraud, there must also be evidence that Gregory suffered damages as a result of relying on these

9

representations. In his petition, Gregory sought out-of-pocket damages in the amount of $40,000, which represents the amount he paid for the two guns. The record contains evidence indicating that the guns, when new, were worth more than the $40,000.00 Gregory paid. Gregory introduced no contrary evidence. Therefore, the evidence shows that the value of the guns that Gregory received is greater than the value that he paid. *See Formosa Plastics,* 960 S.W.2d at 49. Absent evidence of damages, the trial court did not err in granting the motion for directed verdict on Gregory's fraud claim. *See Prudential Ins. Co. of Am.,* 29 S.W.3d at 77; *see also Martin v. Estates of Russell Creek Homeowners Assoc., Inc*., 251 S.W.3d 899, 904 (Tex. App.—Dallas 2008, no pet.) (affirming dismissal of fraud claim absent evidence of damages).

Because the trial court did not err by granting CSM's motion for directed verdict, we overrule Gregory's second issue. For this reason, we need not address his third issue regarding the trial court's failure to include fraud, DTPA, and breach of warranty in the jury charge. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Gregory's first, second, and fourth issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered February 8, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 8, 2017**

**NO. 12-15-00304-CV**

**GEORGE GREGORY,**
Appellant
V.
**CONNECTICUT SHOTGUN MANUFACTURING COMPANY,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 13-1515-C)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **GEORGE GREGORY,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*