

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00061-CV
_____


MINCHUL HO, INDIVIDUALLY AND D/B/A EM TECH, Appellant

V.

BENCO MACHINERY, LLC, F/K/A B TARP EQUIPMENT, LLC, Appellee



On Appeal from the 429th District Court
Collin County, Texas
Trial Court No. 429-03267-2020



Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Benco Machinery, LLC (Benco), paid $460,000.00 to Minchul Ho, individually and d/b/a EM Tech (Ho), of Allen, Texas, to purchase and have delivered 100 hydraulic fracturing storage tanks (frac tanks). Unfortunately, only ten frac tanks were delivered. Though much of the payment was refunded, Benco subsequently demanded that Ho return "$173,173.00, plus interest." Because Ho neither refunded that sum nor delivered the remaining tanks, Benco sued Ho in Collin County,[1] Texas. From a summary judgment favoring Benco, Ho appeals.

On appeal, Ho argues that the trial court abused its discretion in granting Benco's objections to certain portions of its summary judgment evidence. Ho also argues that summary judgment was improper because the excluded evidence showed that Benco failed to prove a meeting of the minds. Because we find that Benco established its entitlement to summary judgment even considering the excluded summary judgment evidence, we affirm the trial court's judgment.

These facts were established by the summary judgment evidence.

On February 24, 2016, a purchase order invoice (Purchase Order) on Ho's letterhead was sent to Bennett and reflected that Benco ordered 100 frac tanks, for which Ho invoiced Benco $370,000.00, and that Ho's shipping charge to "Oklahoma or Texas" was $90,000.00, for a total invoice of $460,000.00. It is undisputed that, on February 25, Benco wired $460,000.00 to Ho's

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

2

bank account. The Purchase Order showed that the order was placed with salesperson "JF" and was "[p]repaid" and that the shipping method was "TBD."

On March 10, Benco received a shipment of ten frac tanks but never received the other ninety tanks. Benco complained to Ho, who refunded Benco (1) $220,000.00 on April 7, 2016; (2) $20,000.00 on May 2, 2016; and (3) $827.00 on December 8, 2016, which still left a balance of $173,173.00. In March 2019, Benco sent a demand letter for that balance, plus interest, and then sued.

In response to the lawsuit, Ho filed a third-party petition against Eddie Nicholas d/b/a CJ Equipment (collectively referred to as Nicholas). Ho alleged that he and Bennett had traveled to Colorado to look at the frac tanks that Nicholas "said he would deliver to Mr. Bennett." While Ho acknowledged payment in full by Benco, he alleged that Nicholas had promised to deliver 100 frac tanks and blamed him for failing to deliver the remaining frac tanks to Benco.

After learning that Ho "did not even possess . . . all the [frac tanks] that [Benco] contracted for" and that it had "resorted to farming out the parties' contract to deal with a third party . . . in a last-minute effort to . . . prevent a breach," Benco filed a traditional motion for summary judgment on its breach of contract claim. In support, Benco attached Bennett's affidavit, the Purchase Order, documentation reflecting the wire transfer to Ho, banking records showing the partial refunds made by Ho to Benco, and an affidavit from its counsel providing detailed support of $40,956.86 in attorney fees. Benco also attached Ho's admissions that (1) "Benco sought to acquire 100 frac tanks," (2) Benco paid $460,000.00, (3) "the remaining 90 frac tanks were not shipped," (4) partial refunds by Ho totaled only $240,827.00, and (5)

3

Nicholas was not mentioned on the Purchase Order. In his affidavit, Bennett stated that Benco had placed the order with Ho for delivery to Benco's principal yard located in Oklahoma City and had never contracted with Nicholas. Bennett also said that Ho had refused to ship the remaining tanks or refund the full purchase price.

In response to the summary judgment motion, Ho denied the existence of a valid contract on the ground that there was no meeting of the minds on the allegation that Nicholas, not Ho, had promised to deliver the tanks. In support, Ho attached his affidavit, which stated that he met Bennett through a mutual friend, Chad Murrish, and that Bennett told Ho that he needed 100 frac tanks. In response to the request, Ho "searched on the internet and found Eddie Nicholas's information," spoke with Nicholas, who confirmed that he had 100 frac tanks, and "got back with Mr. Bennett to let him know . . . that Mr. Nicholas had some available tanks." Ho and Bennett traveled to Colorado to see the tanks, but nothing showed that they met Nicholas there. Instead, they met with David Neilson, Field Supervisor for A & W Water Service, Inc. Ho's affidavit included the following:

> 4. . . . Mr. Bennett identified a specific set of the l00 tanks that he wanted to purchase. I called Mr. Nicholas, and while I was standing next to Mr. [Bennett], negotiated the purchase price between the two of them. I was speaking back and forth with Mr. Nicholas on the phone and Mr. [Bennett] in person next to me. Ultimately a price per tank was agreed on between Mr. Nicholas and Mr. Bennett, which included delivery of the tanks by Mr. Nicholas to Mr. Bennett. The agreed on price was a little less than the price reflected on the February 24, 2016 Invoice.

> 5. Once the price had been agreed on I discussed Mr. Bennett just paying Mr. Nicholas directly for the tanks, but Mr. Bennett said, no, just send me an invoice and mark up the per tank price by about a couple of hundred dollars each and that will be a commission to split with Chad. Even with the small mark up, Mr. Bennett and I discussed that the price per delivered tank that Mr. Bennett agreed to pay was below the market value for similar tanks at that time.

4

6.     Mr. Nicholas and Mr. Bennett agreed that Mr. Nicholas would deliver 10 to 20 tanks per week to Mr. Bennet[t]'s address until all tanks had been delivered . . . . At no time did I ever agree to deliver any tanks.  It was specifically agreed between Mr. Nicholas and Mr. Bennett that Mr. Nicholas was responsible for all deliveries.

7.     . . . Unfortunately, Mr. Nicholas only delivered 10 tanks, out of the 100 tanks he promised, on March 7, 2016.  I had only sent Mr. Nicholas half of the money received from Mr. Bennett, so when it became apparent that Mr. Nicholas would not deliver the rest of the tanks, I refunded the remaining half of the payment to Mr. Bennett.

Ho also attached an email from Ho to Bennett on February 24, 2016, in which Ho wrote, "I have attached your invoice.  The first 20 will be delivered sometime next week.  Will need the address in Beaver, OK."  The next email from Ho to Bennett on April 5 showed that Ho told Nicholas that he had until Friday of that week to "get all the money," implying that he had requested some kind of refund.

Benco moved to strike paragraphs 4 through 6 of Ho's affidavit on the grounds that it contained hearsay, statements unsupported by personal knowledge, and statements of an interested witness not free from contradiction.  Benco argued that Ho made no complaint that the Purchase Order was ambiguous and that Ho's affidavit amounted to an attempt to modify its clear and unambiguous terms by impermissible parol evidence of alleged prior conversations between Ho and Nicholas.  It also argued that Ho could not disclaim its duty to deliver the tanks since the Purchase Order showed that Ho charged and Benco paid to Ho a separate $90,000.00 fee for freight shipping.

After a hearing, the trial court sustained Benco's objections to Ho's summary judgment evidence, granted summary judgment in Benco's favor, and awarded Benco $173,173.00 in

damages and $40,956.86 in attorney fees. After an unopposed motion for severance resulted in Ho's third-party claims against Nicholas being severed into a separate cause, Ho appealed.

By two separate points of error, Ho complains of the trial court's exclusion of portions of his summary judgment evidence. We need not address these points of error because we find that, even when viewing the excluded evidence in the light most favorable to Ho, Benco established its entitlement to summary judgment as a matter of law.

"We review [de novo] a trial court's decision to grant summary judgment . . . ." *Hernandez v. Sun Crane & Hoist, Inc.*, 600 S.W.3d 485, 493 (Tex. App.—Dallas 2020, no pet.) (citing *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018)). "To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c); *Tarr*, 556 S.W.3d at 278). "The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence." *Id.* (citing *Lam v. Phuong Nguyen*, 335 S.W.3d 786, 789 (Tex. App.— Dallas 2011, pet. denied); *Top Cat Ready Mix, LLC v. Alliance Trucking, L.P.*, No. 05-18-00175- CV, 2019 WL 275880, at *2 (Tex. App.—Dallas Jan. 22, 2019, no pet.) (mem. op.)). "[W]e consider the evidence 'in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.'" *Id.* (quoting *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006)).

"A binding contract's elements are (i) an offer, (ii) an acceptance in strict compliance with the offer's terms, (iii) a meeting of the minds, (iv) each party's consent to the terms, and

(v) execution and delivery of the contract with the intent that it be mutual and binding." *Moe's Home Collection, Inc. v. Davis St. Mercantile, LLC*, No. 05-19-00925-CV, 2020 WL 3637623, at *2 (Tex. App.—Dallas July 6, 2020, no pet.) (mem. op.) (citing *Aflalo v. Harris*, 583 S.W.3d 236, 241 n.4 (Tex. App.—Dallas 2018, pet. denied) (en banc)). Ho's Purchase Order invoice to Benco constituted an offer for the sale and shipment of 100 frac tanks, which was delivered to Bennett by Ho via email. By paying the invoice in full, Benco accepted Ho's offer in full. Yet, Ho argues that there was no meeting of the minds on who was to deliver the frac tanks because his parol evidence showed that Nicholas was to deliver them. As a result, Ho contends, there was no valid contract.

"A meeting of the minds is necessary to form a binding contract." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). "A contract is legally binding 'if its terms are sufficiently definite to enable a court to understand the parties' obligations.'" *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 142 (Tex. App.—Dallas 2012, no pet.) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)). "Whether there was a meeting of the minds is based on an objective standard of what the parties said and did rather than their subjective state of mind." *Moe's Home Collection, Inc.*, 2020 WL 3637623, at *2 (citing *Crisp Analytical Lab, L.L.C. v. Jakalam Props., Ltd.*, 422 S.W.3d 85, 89 (Tex. App.—Dallas 2014, pet. denied)).

"The parties' minds must meet as to all of the agreement's essential terms," but a meeting of the minds on nonessential terms is not required. *Sharifi*, 370 S.W.3d at 142 (citing *Effel v. McGarry*, 339 S.W.3d 789, 792 (Tex. App.—Dallas 2011, pet. denied)). This is because

7

"[w]here the parties have intended to conclude a bargain, the agreement's silence as to non-essential, or collateral, matters is not fatal." *Id.* at 142–43 (quoting *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.)).

"The question of whether a term is material is a legal one and we review it de novo, considering each contract on a case-by-case basis." *Id.* at 42. Also, "evidence of a party's subjective misunderstanding has no bearing on the definiteness of the agreement, which is an objective inquiry." *Moe's Home Collection, Inc.*, 2020 WL 3637623, at *4 (citing *Crisp Analytical Lab, L.L.C.*, 422 S.W.3d at 89); *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 670 (Tex. App.—Fort Worth 2010, no pet.) (party's subjective mental state not relevant to offer, acceptance, and meeting of minds).

The summary judgment evidence, including Ho's evidence, showed that Bennett told Ho that he needed 100 frac tanks, Ho found that Nicholas had the tanks, and both Ho and Bennett traveled to Colorado to see them. Bennett identified the tanks that he wanted but did not meet with or talk to Nicholas. Instead, Ho spoke with Nicholas on the telephone and went between Nicholas and Bennett until Nicholas made an offer for the unit price of the tanks that was lower than the price Ho listed on the Purchase Order. Bennett specifically told Ho that he did not want to pay Nicholas for the tanks. Afterwards, Ho emailed the Purchase Order to Bennett, told Bennett that the first twenty tanks would soon be delivered, and accepted payment for the purchase and delivery of 100 frac tanks. Thus, the summary judgment evidence showed that Ho and Bennett intended to enter into a bargain and agreed to the following material terms: (1) Benco would receive 100 frac tanks, (2) the unit price for each tank charged by Ho was

$3,700.00 per tank, (3) the tanks would be shipped to Oklahoma or Texas for a cost of $90,000.00, and (4) Benco would pay Ho the total cost of $460,000.00. Failure to abide by these terms by any party would constitute a breach.

While the delivery of 100 frac tanks was a material term of the agreement, *how* they were to get to Benco was not. In other words, by making the offer in the Purchase Order, Ho agreed that Benco would be provided with delivery of 100 frac tanks, whether by Ho, Nicholas, or someone else, and such delivery by any party would have satisfied the obligations in the Purchase Order to provide the tanks. As a result, a meeting of the minds as to whether Ho or Nicholas was to deliver the tanks was not required. Thus, we conclude that, as a matter of law, Benco established the existence of a valid contract as memorialized in the Purchase Order.

Having found the existence of a valid contract, we next address whether Benco proved that Ho breached it as a matter of law. "A contract breach claim's elements are (i) a valid contract, (ii) performance or tendered performance by the plaintiff, (iii) a breach by the defendant, and (iv) damages sustained by the plaintiff as a result of the breach." *Moe's Home Collection, Inc.*, 2020 WL 3637623, at *2 (citing *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008, no pet.)). The uncontested summary judgment evidence showed that Ho promised that Benco would receive delivery of 100 frac tanks in exchange for $460,000.00, that Benco performed in full by delivering payment to Ho, that Ho accepted full payment even though Benco never received ninety percent of the ordered frac tanks, and that, while Ho refunded some of Benco's money, $173,173.00 remained outstanding. As a result, the trial court's summary judgment was proper.

9

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     November 23, 2020
Date Decided:       December 11, 2020